J. B. LOEB, *Appellant*, v. CITY OF JACKSONVILLE, a municipal corporation; JOHN L. HALL, as Tax Assessor of the City of Jacksonville; ALEXANDER RAY, as Treasurer and Tax Collector of the City of Jacksonville; and J. E. PACE, as Auditor of the City of Jacksonville, *Appellees*.

Division A.

Opinion filed May 4, 1931.

*John F. Hall,* Attorney for the Appellant;

*Austin Miller* and *Emmet Safay,* Attorneys for the Appellees.

ELLIS, J.—J. B. Loeb, a citizen and tax payer of the City of Jacksonville, exhibited his bill in chancery against the City of Jacksonville, J. L. Hall, as Tax Assessor, Alexander Ray as Treasurer and Tax Collector and J. E. Pace as Auditor of the City to declare a certain item in the city budget for the year 1928 appearing under the title "Division No. 11" for advertising $89,980. to be illegal and that Section 8 of Ordinance number T-43 under which a tax of eight tenths (.8) of one mill was levied upon the property in said City for such purpose is void. It is alleged that the item under Division No. 11 mentioned above is made up of appropriations by the City Council and City Commission as follows: for entertainment of the representatives of the Imperial Council of the Ancient Arabic Shrine of North America in Jacksonville $25,000.; for entertainment of the representatives of the Benevolent and Protective Order of Elks in the City $15,000.; for entertainment of the representatives of the Order of Railway Conductors of America in the city $15,000.; for the

Florida State Fair Association $10,000.; to reimburse the City Commission for a like sum theretofore donated to Florida State Fair Association; to reimburse the City Commission in the sum of $3,500. for advances made to the American Legion Drum and Bugle Corps and the remaining $11,400. for pledges and promises of donations to other corporations, associations, institutions and individuals under the pretense of advertising. It is alleged that such alleged misappropriations of the City's revenue violates Sections 5 and 10 of Article IX of the Constitution and Section 54 of the City Charter. It is alleged that such appropriations are not for a municipal purpose within the meaning of the Constitution and laws.

It is also alleged that in the budget adopted by the City officials there appear such items as appropriations for militia $2,400., Chamber of Commerce Employment Bureau $3,000., Auditor's Chief Clerk $600. which complainant says are illegal because they violate certain provisions of the Constitution not for purposes authorized by law and are prohibited by Sections 54 and 99 of the city charter. The complainant alleges that he had paid all taxes which have become due and payable and tenders and offers to pay all taxes which have been legally levied.

The answer admits the allegations of the bill as to the levy of a tax of eight tenths (.8) of a mill for advertising purposes and avers that the appropriations as alleged were made in execution of the plan for advertising the city, its properties and advantages to the end that hundreds of "representative citizens from all parts of the United States" would "personally visit and inspect the City of Jacksonville and its advantages and thereby foster an increase in the population of the said City and thereby materially increase the values of its property, business

conditions, and otherwise contribute to the prosperity of its inhabitants''.

It averred that the appropriation of $10,000. for the State Fair was an error as no such appropriation was made and that the sum referred to in the bill to reimburse the City Commission for a like amount paid to the State Fair Association had already been paid to the Association under authority of Section 4527 R. G. S. out of funds transferred from the Storeroom Department. The same was true as to the appropriations for the American Legion Drum and Bugle Corps. The appropriation of $2,400. for the militia is averred to be justified under Chapter 6357 Act of 1911; the appropriation of $3,000. to the Chamber of Commerce was in the interest of obtaining employment for the City's unemployed and which is averred to be a legitimate municipal function, and the six hundred dollars apportioned for City Auditor's Chief Clerk is merely one of the items going to make up that employee's salary which is fixed by ordinance. The answer concluded with a demurrer to certain paragraphs of the bill.

The defendants interposed an additional answer in which the defense was set up in justification of the appropriation and tax levy for advertising purposes that the city exercised proprietary and quasi corporate functions as well as governmental functions; that it is a large commercial city and railroad terminus for many large trunk line railroads extending into all parts of the United States and had favorable railroad passenger and freight rates; that its population was large and the assessed value of its real and personal property amounted to $99,000,000.; that it has transportation facilities by water and is climatically so situated that it is attractive to ''outside''

people as a place for homes as well as a place for "business, commercial and industrial purposes"; that it has the authority to acquire and own and operate under its charter large public facilities and improvements; that it owns an electric light and power plant worth approximately five million dollars, athletic and recreation fields, golf courses and stadiums and public buildings for recreation and amusement of an approximate value of two million-five hundred thousand dollars; that the city has power under the provisions of Chapter 10811 Acts of 1925 and Chapter 11563 Acts 1925 to own and operate auditoriums in which to hold public hearings, concerts and public conventions and to "meet the changing conditions and necessities of the public"; that the city has power to issue bonds to raise money for such purposes as also to operate broadcasting stations, aeroplane landing fields, yacht basins and all other stadiums, buildings or improvements which the city may deem necessary or desirable.

The substance of the remaining portion of the answer is that the city in order to operate all such conveniences, improvements, play grounds and pleasure or recreation fields and carry on its proprietary interests and extend, increase and develop them may tax the private property of the citizens to raise revenue to that end.

Motions to strike and exceptions to portions of the answer were denied. The Chancellor prepared and filed an opinion upon what he conceived to be the principal question involved, made an order granting a temporary injunction against the defendants restraining them from making the appropriations of which the bill complained and rendered a final decree on the hearing which was on bill and answer. He overruled the demurrer to the bill, denied the restraining order against the levy and collection

of the tax levy of eight tenths (.8) of one (1) mill for advertising as provided by Section 8 of Ordinance Number T-43, denied the application for a restraining order to prevent the Auditor from drawing a warrant or voucher in payment of the appropriation of $2,400. to the militia and the sum of $3,500. to American Legion Drum and Bugle Corps from the advertising fund and denied an order restraining the City Treasurer from paying such warrant.

The restraining order theretofore granted was made perpetual, which restrained appropriations for the "Imperial Council of the Ancient Arabic Shrine of North America"; Benevolent and Protective Order of Elks; Order of Railway Conductors of America; Auditor's Chief Clerk and Chamber of Commerce Employment Bureau or any like institution, association or individual, and the drawing of warrants for same and payment thereof by the City Treasurer.

The complainant Loeb appealed from the final decree.

The power of the city to levy a tax for advertising purposes is presented in this appeal. As shown by the bill the city undertook to levy and collect a tax of eight tenths (.8) of one mill for such purpose which according to the showing made would produce a sum amounting to $89,- 900. of which the chancellor deemed that approximately sixty thousand dollars or more were illegally appropriated.

An appellate court may not be concerned with the views or reasons given by a trial judge for the conclusion reached by him. See Smith v. Croom, 7 Fla. 180; Adams v. Am. Agricultural Chemical Co., 78 Fla. 362, 82 South. Rep. 850; Broward Estates Corporation v. Chillingworth, 93 Fla. 366, 112 South. Rep. 64. But the views expressed by the chancellor in his opinion filed in December, 1927,

which antedated the final decree four months will be instructive.

The chancellor held the first question to be whether the city may levy taxes and spend money for advertising; that the Legislature had not vested the city with any such power directly and if it may exercise any such power it is because such power is incident to general powers conferred. He thought that the question had never before been presented to a court in any English speaking country because there were no reported cases in point. He proceeds then to state that the modern city is a very different organization from what it was a few decades ago. That while it still is a branch of the state sovereignty "Manifesting a local self-government, it is also vastly more". It is, said he, "a complex industrial organization and vast property owner. It has lots of things to sell—electricity, water, dockage, amusement, and often gas and transportation. And it derives enormous revenues from these sources. It is interested in expanding its territory, increasing its population, and bringing in new industries. These accretions to the things that constitute the city mean more patronage for its municipal utilities, more money circulating within its borders, more taxes coming into its treasury for streets, parks and public buildings, better homes, better churches, better schools".

From the above premises the learned chancellor concluded that the modern city is keenly and vitally interested in making its advantages known to people who might be induced to become residents of it or establish their industrial plants within its borders. "In other words, and to talk right in point on the case here at bar, the City of Jacksonville is very much 'in business for itself' ", the Chancellor wrote. The law permits the city to be in

business, so the law does not prevent it from advertising its business if the city elects to do so, he reasoned. On these premises and by that argument he held that the restraining order preventing the collection of the tax levied for advertising purposes should be denied.

We do not agree with the opinion, the argument nor the conclusion. All citizens of Florida doubtless enjoy sensations of pleasurable pride in contemplating the prosperity, growth, wealth and beauty of the cities and other municipal organizations of the State and much, if not all, of that satisfaction rests in the contemplation of the fact that our cities and towns grow, are well managed and become efficient instruments of the government in the administration of local affairs as aids in the development and execution of sovereign power and governmental regulation to the end that the right of property, the safety and happiness of the people may be secured and preserved. The idea that our cities, considered as governmental agencies, are vast commercial institutions specializing in pleasure grounds, athletic fields, radio broadcasting stations, music halls and stadiums is a novel one, especially in view of the powers of government as defined and outlined in our Constitution.

It is true that the doctrine has obtained and is now recognized that as the necessities of the local population require and because of the public interest in certain public utilities and the universal and intimate relation they have to the lives and pursuit of happiness of the local citizen, cities are empowered to acquire and operate in the interest of the local population certain business and properties such as water, lighting and heating plants, sewerage and garbage facilities, telephones and transportation. These are all operated in the so-called proprietary

rights of the city but theoretically in the interest and to the convenience and profit of the local citizenry who in reality constitute the real owners of the properties.

It was never intended under the most extreme views of commercialism that they may be used and operated to the disadvantage of the people and at excessive cost and expense to the end that the profits therefrom may be expended in governmental activities lawfully exercised within the limitation of constitutional and legislative authority. Certainly it is not permissible under lawful power to extort exorbitant and unreasonable charges for the public service to the local population and in addition thereto to levy a public tax in the exercise of sovereign power to obtain more money in order to advertise such proprietary interest to "outside" people to the end that the proprietary activities of the city may be increased, population may grow, better homes be established and better churches and schools secured and amusement facilities expanded.

A city is a mere auxiliary to the State government. It is a public institution for self-government and local administration of the affairs of State. It is appointed and empowered for that purpose and is therefore an agent of the state for local administration of governmental affairs. See Kaufman v. Tallahassee, 84 Fla. 634, 94 South. Rep. 697, 30 A. L. R. 471; Keggin v. Hillsborough Co., 71 Fla. 356, 71 South. Rep. 372.

In its public character a municipal corporation is the agent of the State acting as an arm of the sovereignty of the State created for the convenient administration of the government exercising to the extent that they have been granted the governmental functions and powers of the State. Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; Malone v. Quincy, 66 Fla. 52, 62 South. Rep. 922, Ann. Cas. 1916 D 208.

Governmental functions are those conferred or imposed upon the municipality as a local agency of limited and prescribed jurisdiction to be employed in administering the affairs of the State and promoting the public welfare. Bryan v. West Palm Beach, 75 Fla. 19, 77 South. Rep. 627.

In this State the dual or double capacity in which a municipality acts, exercising two classes of rights, two classes of powers and two kinds of duties is recognized as in many other jurisdictions in the United States. Considered as an agency of the State the functions, powers and rights of the municipality are variously designated as public, legislative, political or governmental. Vilas v. City of Manila, 220 U. S. 345, 55 L. Ed. 491, 31 Sup. Ct. Rep. 416.

Not considered as an agency of the State but in the other of these dual capacities the functions and powers exercised are variously designated as private, quasi-private, proprietary, municipal or ministerial, even commercial. See Trenton v. New Jersey, 262 U. S. 182, 67 L. Ed. 937, 43 Sup. Ct. Rep. 534.

"The municipal corporation is allowed to go into the business only on the theory that thereby the public welfare will be subserved. So far as gain is an object it is a gain to a public body and must be used for public ends": See Springfield Gas & El. Co. v. City of Springfield, 257 U. S. 66, 66 L. Ed. 131, 42 Sup. Ct. Rep. 24.

But all functions of a municipal corporation not governmental are strictly municipal. State v. Cederaske, 80 Conn. 478, 69 Atl. Rep. 19; 43 C. J. 183; Murphy v. Lowell, 124 Mass. 564.

The municipal functions are those granted for the specific benefit and advantage of the urban community embraced within the corporate boundaries. Bryan v. West Palm Beach, *supra*.

The distinction between the two capacities of a municipal corporation is important but it is not always easy to draw; some functions are so close to the line that courts vary in their views concerning them and are held in some states to be governmental and in others private, but it is generally conceded that a municipal corporation cannot be constitutionally authorized to undertake any functions really private. If there is any restriction implied and inherent in the spirit of American constitutions it is that the government and its subdivisions shall confine themselves to the business of government for which they are created. 19 R. C. L. 709.

The doctrines are well established in the State relating to municipal corporations that the existence of authority for a municipality to act cannot be assumed. If a reasonable doubt exists as to a particular power it should be resolved against the city. When a proper function of government appertaining to the duties of a city is apparent the presumption of the city's power may obtain. Any ambiguity or doubt as to the extent of a power attempted to be exercised by a city out of the usual range or which may affect the common law right of a citizen should be resolved against the city. Jacksonville Electric Light Co. v. Jacksonville, 36 Fla. 229, 18 South. Rep. 677, 51 Am. St. Rep. 24; Galloway v. Tavares, 37 Fla. 58, 19 South. Rep. 170; Porter v. Vinzant, 49 Fla. 213, 38 South. Rep. 607, 111 Am. St. Rep. 93; State v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358, 19 L. R. A. (N.S.) 183n; Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; Malone v. Quincy, *supra;* Ex Parte Davidson, 76 Fla. 272, 79 South. Rep. 727; Anderson v. Shackleford, 74 Fla. 36, 76 South. Rep. 343.

Applying the above rule to the attempted exercise by the

City of Jacksonville of the power to levy and collect a tax from its citizens for the purposes which the bill and answer disclose the power so attempted to be exercised should be resolved against it. It is disclosed by the chancellor's opinion as well as by the pleadings in the case that the city seeks, by the levying and collecting of the tax to raise a fund to advertise the city's properties and public utility facilities and living conditions to the end that people in other cities not only of this State but other States and even foreign counties may be induced to visit or take up their residences in the city limits and thus increase the market for the sale of those commodities which the necessities and convenience of the local citizenry make it expedient in their interest to be dispensed by the municipality. The function of government is the enactment and enforcement of rules of conduct for the people within a given territory to secure so nearly as possible individual opportunities for the enjoyment of the so-called inalienable rights which include the pursuit of happiness by the people within the territory. Not to reach out and bring into the territory other peoples from foreign states and territories that they may also be informed of the opportunities afforded by the particular government and may migrate to the territory to enjoy them. Whatever the modern city may be as distinguished from the cities of three or four decades ago when our Constitution was adopted, it can not be said that they have grown from under its influence and become a sort of Commercial Frankenstein prodigy.

The decree of the chancellor in so far as it perpetually enjoins the appropriations enumerated therein is affirmed but in all other respects it is reversed.

Affirmed in part and reversed in part.

BUFORD, C.J., AND WHITFIELD AND TERRELL, J.J., concur in the conclusion.

BROWN, J., concurs specially.

BROWN, J.—I am in full sympathy with much that has been said in the able opinion of MR. JUSTICE ELLIS in this case, and I concur in the conclusion reached. However, I do not think it necessary to go further than to hold that, inasmuch as the City of Jacksonville has not been vested by the legislature with the power to levy a tax for the purpose of municipal advertising, such power will not be implied. City of Bradenton v. State, 88 Fla. 381, 102 So. 556. Whether the legislature could constitutionally vest a municipality of this State with that power, I do not deem it necessary for the court to decide in this case. The general question is discussed to some extent in the case of Earle v. Dade County, 92 Fla. 432, 109 So. 331. See also 19 R. C. L. 708 to 723 inclusive. Livingston County v. Darlington, 101 U. S. 407, 25 L. Ed. 1015; Stewart v. DeLand, etc., District, 71 Fla. 158, 71 So. 42. In the case of Earle v. Dade County, *supra,* this Court held that the legislature could authorize a county to levy taxes and issue bonds for the purpose of providing grounds and buildings for the conducting of fairs and agricultural exhibitions for the enhancement of the agricultural interests of the County.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.