CITY OF JACKSONVILLE, *et al.,* v. ALICE OLDHAM.

150 So. 619.

Division B.

Opinion Filed October 28, 1933.

*Austin Miller* and *Emmet Safay,* for Appellants;

*Wm. J. DeHoff,* for Appellee;

*J. W. Watson, Jr.,* as *Amicus Curiae.*

WHITFIELD, P. J.—The Constitution provides that "No tax shall be levied except in pursuance of law." Section 3, Article IX. "The Legislature shall authorize the several counties and incorporated cities and towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes." Section 6, Article IX.

"The Legislature shall have power to establish, and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time." Sec. 8, Art. VIII.

Sections 1 and 5, Chapter 15263, Acts of 1931, provide: "That the City of Jacksonville is hereby authorized to assess, levy and collect annually, in the manner provided by law, on all taxable property therein, a special tax not to exceed one-half of one mill on the dollar of the assessed value of said taxable property for the purpose of providing a fund for the advertising of said City."

"All laws and parts of laws in conflict herewith are to the extent of such conflict hereby repealed; and this Act shall take effect immediately upon its passage and approval by the Governor and the approval by a majority vote of the qualified electors of the City of Jacksonville

who are freeholders voting for or against approval in any general municipal election or special election."

The Act was approved by the Governor June 3, 1931.

At the suit of a citizen tax payer the circuit court held "that the assessment and imposition of a tax for the purpose of providing a fund for the advertising of the city of Jacksonville is not a municipal purpose within the meaning of the Constitution, and that Chapter 15263, Acts of 1931, is unconstitutional and void."

The court enjoined the holding of an election to approve the Act.

As the Constitution does not define or amplify the term, "municipal purposes," duly enacted statutes may determine what is a municipal purpose; and the courts are not authorized to render such determination ineffectual, unless it clearly appears that the legislative determination violates some provision of organic law, or unless the particular enactment can have no legal or practical relation whatever to any municipal purpose. See Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716; City of Tampa v. Prince, 63 Fla. 387, 58 So. 542; Jordan v. Duval County, 68 Fla. 48, 66 So. 298; City of Bradenton v. State, et al., 88 Fla. 381, 102 So. 556; Bd. of Com'rs. of Escambia Co. v. Bd. of Pilot Com'rs. of Port of Pensacola, 52 Fla. 197, 42 So. 697; Earle v. Dade County, 92 Fla. 432, 109 So. 331; West, et al., v. Town of Lake Placid, 97 Fla. 127, 120 So. 361.

The statute expressly authorizes the City of Jacksonville to levy and collect annually on all taxable property therein, "a special tax not to exceed one-half on one mill on the dollar of the assessed value of said taxable property for the purpose of providing a fund for the advertising of the said City."

As the Constitution does not define "municipal purposes"

and does not expressly or by implication forbid such a tax levy as the statute authorizes for the stated purpose; and as proper and effective advertising of the resources, attractions and advantages afforded by the city to attract prospective settlers and investors to the city cannot fairly be said to have no legal or practical relation whatever to a proper municipal purpose, the determination by the Legislature in enacting the statute that the authorized tax levy is for a municipal purpose, should not be rendered inoperative by the courts, particularly in view of the broad authority that is expressly conferred upon the legislature with reference to conferring powers upon municipalities by Section 8, Article VIII of the Constitution. The administration of the tax fund is subject to applicable provisions and rules of law.

Reversed.

Davis, C. J., and Terrell, Brown and Buford, J. J., concur.

Ellis, J., dissents.

Davis, C. J. (concurring).—The principal question presented by this appeal is whether or not the imposition, with legislative authority, of a municipal advertising tax is, or is not, constitutional; to hold it unconstitutional it would have to be decided by this Court that such a tax is not for a public purpose, although the Legislature of the State in providing for it, has said that it is.

In this respect, the present case differs from the earlier case of Loeb v. City of Jacksonville, 101 Fla. 429, 134 So. Rep. 205, where, in an opinion prepared by Mr. Justice Ellis, this Court held the imposition of an advertising tax, *without express legislative authority therefor,* not unconstitutional, but simply invalid as the exercise of a municipal

power not conferred upon the municipality by the Legislature.*

The law from time immemorial has recognized the value of advertisements to advertisers, because it has always allowed substantial damages for breach of a contract to insert advertisements, damages for the breach being claimed for the loss of business alleged to have been occasioned by the failure to publish the advertisements contracted for. In constructive service of process, the courts in hundreds of cases depend for their jurisdiction upon the efficacy of advertising giving notice to the world of the pendency of the litigation and thereby affording the constitutionally required due process of law. In fact it is recorded in history that traders made themselves known and called attention to their products by mural inscriptions of the walls of public buildings long before the age of printing, and it is an historical fact that a papyrus discovered at Thebes reputed to be 3000 years old, contained an advertisement offering a reward for a runaway slave.

Economic justification for advertising *at public expense* for public purposes is likewise found in the earliest pages of history. The most noteworthy historical examples of publicly planned and accomplished economic advertising of the industry of a city is disclosed by the sending of state agents from the ancient city of Tyre to imperial Rome to induce Cleopatra to advertise manufactured Tyrian silks by apearing at a great Roman banquet arrayed in thin spun and clinging silken garments, made by the skillful Tyrians, and wondrously colored with the noted Tyrian purple, then a new luxury. The impression made by this ingenious bit

---

*Insofar as the opinion of Mr. Justice ELLIS expressed the view that a municipal advertising tax was not for a public purpose the opinion was not concurred in by a majority of the members of the Supreme Court, as the reported case shows.

of public advertising brought about by the commercial foresight of the silk artisans of Tyre, was so indelibly stamped upon those who were privileged to view the spectacle presented by the beauteous Cleopatra, that the reputation of the famous Tyrian silks and the famous Tyrian purple was not only spread throughout the length and breadth of Rome in contemporary time, but has become a matter of ineradicable historical significance. And as a result of such advertising the ancient Phoenician City of Tyre seethed with commerce for many years resulting from the manufacture of silk and silken garments and its constant advertising of them to the world.

In England, the fact that advertising at public expense is generally regarded as being for a public purpose, and therefore entirely valid and proper to be paid for by public funds raised by taxation, has been recognized in the "Health Resorts and Watering Places Act" passed in 1921. While the Act is a comparatively recent one, it is simply declaratory and regulatory of a legal policy long acknowledged to exist in that country with respect to the subject of public advertising done by public agencies on behalf of all of the people for a commercial purpose. Even in this country, the United States government is now busily engaged in putting over its NRA program through resorting to the greatest program of radio, news-reel, bill board, newspaper, magazine and periodical advertising ever attempted on a national scale as a means of overthrowing the baneful effects of a world-wide depression as it affects this nation, and during the World War the same public policy was followed and remained unchallenged.

With all of these facts before us, of which we must take judicial notice, since the courts are assumed to know what everybody knows as a matter of common knowledge, it

seems clear that a tax for advertising purposes by a municipality, *when expressly authorized by the Legislature,* is plainly for a public purpose. Being so, the courts have no right to shut their eyes to historical and contemporaneous facts which support that conception of it.

No doubt abuses in the expenditure of advertising funds raised by taxation have occurred through the expenditure of such funds for purposes pretended to advertise for the common benefit of all, but which in their critical analysis, are merely promotive of some private object. The remedy for abuses in expenditures, however, is to restrain the abuse of disbursement, not to cut off by injunction the right to raise the money to be spent which can be, and should be, spent only for legitimate advertising purposes, with its expenditure kept always under public control.

BUFORD, J., concurs.

ELLIS, J. (dissenting).—This is an appeal from an order against the City of Jacksonville and the City Commissioners enjoining the defendants from holding a special election by the freeholders of the city to determine whether the City of Jacksonville shall be authorized to assess, levy and collect a tax for "advertising purposes."

An Act of the Legislature approved June 3, 1931, Chapter 15263, Laws 1931, purported to authorize the city to assess, levy and collect annually on all taxable property therein a special tax not to exceed one-half of one mill on the dollar for the purpose of providing a fund for "the advertising of the said city." Section 5 provided that the Act should take effect "immediately upon its passage and approval by the Governor and the approval by a majority vote of the qualified electors of the City of Jacksonville who are freeholders voting for or against approval in any general municipal election or special election."

In the case of Loeb v. City of Jacksonville, 101 Fla. 429,

134 South. Rep. 205, this Court held that no authority existed in the charter of the city to levy and collect such a tax, that is to say, a tax to "raise a fund to advertise the city's properties and public utility facilities" to the end as disclosed by the opinion of the Chancellor from whose order the appeal in that case was taken and the pleadings in the case.

Since that decision rendered in May, 1931, the Legislature enacted the statute mentioned above.

By the terms of the Act it is to become effective upon an affirmative vote of a majority of the qualified electors of the city who are freeholders. If it is within the power of the Legislature under the provisions of Art. VIII, Sec. 8 of the Constitution, empowering the Leigslature to establish and abolish municipalities, provide for their government and prescribe their jurisdiction and powers, to authorize the city to levy and assess a tax for advertising purposes and to declare such a tax to be a municipal purpose it is because such a tax "relates to some corporate purpose, some purpose which is germane to the general scope of the object for which the corporation was created or such as has a legitimate connection with that object and a manifest relation thereto." See 1 McQuillin on Municipal Corporations, Sec. 357; Weightman v. Clark, 103 U. S. 256, 26 L. Ed. 392; Banking House of Bartholow v. Trustees, 105 U. S. 6, 26 L. Ed. 937; City of Ottawa v. Carey, 108 U. S. 110, 27 L. Ed. 669, 2 Sup. Ct. Rep. 361.

The Weightman-Clark case, *supra,* held that the Constitution of Illinois, Art. IX, Sec. 5, in all respects essentially like Art. IX, Sec. 5 of the Florida Constitution 1885, did not empower the Legislature to authorize taxation by public corporations to build a railroad or issue bonds for that purpose. The Constitution of that State provided that coun-

ties, townships, school districts, cities, towns and villages "may be vested with power to assess and collect taxes for corporate purposes." The court held "that Art. IX; Sec. 5, of the Constitution is a limitation on the power of the Legislature to authorize taxation by public corporations or the political subdivisions of the State." The Supreme Court of Illinois had uniformly so decided. The Constitution of Florida, Art. IX, Sec. 5, is a more strict limitation upon the Legislature. It provides that the Legislature shall authorize the several counties and incorporated cities and towns in the State to assess and impose taxes for county and "municipal purposes, and *for no other purposes.*" (Italics supplied.)

Mr. Chief Justice Waite, in delivering the opinion in the case of City of Ottawa v. Carey, *supra,* said: "Municipal corporations are created to aid the State Government in the regulation and administration of local affairs. They have only such powers of government as are expressly granted them, or such as are necessary to carry into effect those that are granted. No powers can be implied except such as are essential to the objects and purposes of the corporation as created and established." Citing 1 Dill. Mun. Corp. Sec. 89, 3d Ed.

Those decisions were rendered in the years 1881 and 1882. Our Constitution of 1885 was adopted in 1886. The provision relating to taxation by counties, cities and towns being practically in the same language as that of the Illinois Constitution it is not unreasonable that the significance of the language used in our Consitution is the same as that imputed to the same language in the Illinois Constitution by the Supreme Court of the United States.

I do not agree therefore to the major premises in the opinion of the majority, namely, that it is within the power

of the Legislature arbitrarily and absolutely to define and determine what shall constitute a municipal purpose, and I deny that a tax for "advertising of said City" is *per se* a municipal purpose and no other purpose. It is conceivable that money raised by such a tax may be expended for purposes which could not bear the slightest perceptible relation to a governmental or municipal purpose.

I do not subscribe to the doctrine that by reason of the so-called complex social and industrial conditions a city has grown from under the influence of our constitutional provisions and become a vast property owner and complex commercial organization with powers greater than those to which the Constitution limits them.

If the Act, Chapter 15263, Laws 1931, is to be upheld, it should be upheld upon the single proposition that a tax for creating a "fund for the advertising of the said city" constitutes a tax for a municipal purpose by reason of the nature and character of the purpose for which it is levied and not because the Legislature has so defined it. It is a judicial question to be determined in the light of the purposes of the tax and the limitations of the Constitution restricting the powers of the city to the exercise of governmental functions and powers essential to the objects and purposes of the corporation as established. It was not established as an advertising agency of local proprietary possessions.

There is another question, two others in fact, which should be determined before holding that the city has the power to subject the property, real and personal, to this burden for "advertising." The Act does not grant the power to tax property in the city, but leaves the effect of the Act, that is, the existence of the power, to the self-determination by the city as evidenced by a majority vote

of the qualified electors therein who are freeholders. The expediency, the wisdom of the exercise of the power to tax for the purpose stated is attempted to be cast back upon a selected class of citizens, viz.: qualified voters who are freeholders. Such an attempt is to subvert the Constitution and change its distribution of powers without the action or consent of the people adopting the Constitution.

"To say that the Legislators may deem a law to be expedient, provided the people shall deem it expedient, is to suggest an abandonment of the legislative function by those to whose wisdom and patriotism the Constitution has intrusted the prerogative of determining whether a law is or is not expedient." See Cincinnati R. Co. v. Clinton County, 1 Ch. St. 77.

A statute to take effect upon a subsequent event must be a law *in presenti* when it comes from the Legislature to take effect in the future. Such is not the character of the statute, Chapter 15263, *supra*. It is not a law *in presenti* to take effect in the future or upon the happening of an event, but the wisdom or expediency of it, whether the tax shall be levied or not, whether that power shall be exercised or not, is made by the terms of the Act to depend upon the majority vote of a limited class of the qualified electors of the city. No event affecting the expediency or wisdom of the law is expected to happen. Abstractly considered, the expediency or wisdom of empowering the city to levy a tax for advertising depends on a vote of the favored class of municipal electors. If it is unwise before the vote is taken it is equally unwise afterwards. The Legislature has no more power to refer such a question to the people or a favored class of them than to a single individual. Such are the views of the Supreme Court of California. *Ex parte* Wall, 48 Cal. 279, 17 Am. Rep. 425. See

also Schaezlein v. Cabaniss, 135 466, 67 Pac. Rep. 755, 87 Am. St. Rep. 122, 56 L. R. A. 733.

The objection to this statute is that the power has not been vested in the city to levy such a tax but the power to exercise such a power is left to the judgment of a majority of the qualified electors of the city who are freeholders. If they deem the law to be wise it is to become effective; if they deem it to be unwise it is not to become effective. See also Wright v. Cunningham, 115 Tenn. 445, 91 S. W. Rep. 293.

The Act referred to is merely an attempt to inject into the lawmaking power, vested in the people in the Legislature, the principle of the referendum. The Supreme Court of Oregon holds there can be no valid referendum of any enacted law except pursuant to constitutional authority. State v. Mack, 134 Or. 67, 292 Pac. Rep. 306.

The referendum is a negative power through which an appeal may be taken to the people from an affirmative action by their representatives, 59 C. J. 688, but the power attempted to be vested by this Act is not negative but affirmative and creative.

If such a delegation of power is attempted to be sustained upon the argument that the affirmative vote of the favored class is merely the happening of an event upon which the Legislative wisdom is supposed to operate, it must not be forgotten that if the vote should be negative then the legislative wisdom is not apparent nor has it been displayed. The legislative wisdom and its conception of the expediency of such legislation is made dependent entirely upon the decision of a majority of the favored class. The Governor might not approve yet the Act could become a law; if he actually vetoed it the veto could be overcome

by the requisite vote of the Legislature, but if the voters reject it there is no law, if they approve it there is a law.

These views are seemingly in conflict with the views expressed in the case of State *ex rel.* Cheyney v. Sammons, 62 Fla. 303, 57 South. Rep. 196. The question in that case was the validity of an Act of the Legislature creating the County of Pinellas of certain territory embraced within the County of Hillsborough. Section 20 provided that the sections of the Act creating the county should take effect upon their ratification by the affirmative vote of three-fifths of the votes cast at an election to be held in the territory set forth as the County of Pinellas. The court held that it was competent for the Legislature to enact a law complete in itself to take effect of its own force upon the happening of a contingency. It held the contingency to be the "affirmative vote of the electors in the territory to be affected,"

The cases of Cotton v. Co. Commissioners of Leon Co., 6 Fla. 610, and State v. Atlantic Coast Line R. Co. 56 Fla. 617, 47 South Rep. 969, were cited to support the doctrine. The substance of the decision in the Cotton case, *supra,* Chief Justice BALTZELL dissenting, is that the subscription by the County Commissioners of Leon County for stock in a railroad corporation whose road was to pass through the county was a "county purpose" within the meaning of the Constitution and the vote of the pepole was merely to decide whether their commissioners should buy such stock. In the last analysis the people were merely to decide at an election for that purpose whether they should approve of the exercise by their commissioners of the power.

The Atlantic Coast Line case, *supra,* involved the power of the Legislature to authorize a Railroad Commission to provide rules and regulations affecting Common Carriers upon which rules and regulations the law may operate.

I submit that neither cases supported the doctrine announced in the Cheyney, *supra*. The case of Nabb v. Andrew, 89 Fla. 414, 104 South. Rep. 591, is not authority for the doctrine announced in the Cheyney case, *supra*, because the Nabb case rests upon the principle that the Legislature has plenary power to annex territory to an existing municipality with or without an affirmative vote of the qualified electors within the territory to be included. That being true then an ordinance of the city would apply to the territory if the qualified electors should approve the new boundaries. The contingency to happen was not the approval of the ordinance by the qualified electors, but whether the territory should be included in the city. The contingency to happen must be some act or transaction which may or may not occur in the natural course of events, not the will of some favored class of the people as to whether or not the legislative proposition shall become a law. The act must be complete within itself and not dependent upon the will of a class of people expressed at an election.

There is also a matter of discrimination unreasonably made in favor of a favored class of qualified voters. If the tax is levied it becomes a burden upon both personal and real property. Yet the qualified voters of the city who own personal property but no real property are excluded by the terms of the Act from expressing their views as to the wisdom or unwisdom, expediency or inexpediency, of the levying of the tax.

I am of the opinion that the order of the Chancellor granting the restraining order should be affirmed.