STATE, *ex rel.* CITY OF ST. PETERSBURG v. R. H. NOEL.

154 So. 214.
En Banc.
Opinion Filed March 6, 1934.

*W. F. Way* and *Carroll R. Runyon* and *Lewis T. Wray,* for Relator;

*S. Henry Harris* and *Raney H. Martin,* for Respondent.

ELLIS, J.—The City of St. Petersburg seeks by means of a writ of quo warranto based upon a petition signed in its name by its attorneys to test the authority by which R. H. Noel exercises the powers and functions of Chief of Police of the city.

In the petition the city was not joined by the Attorney General of the State, who refused an application by the city to him to allow the information to be brought in his name as Attorney General.

Upon the petition being presented to this Court it caused a rule *nisi* to be issued to Noel requiring him to show cause on a date named why the petition in the nature of quo warranto should not be permitted to be filed and due and orderly proceedings had thereon according to law.

Noel made a return to the rule in which he questions both the power of the court to issue the writ upon the informa-

tion tendered as well as the propriety of a judgment of ouster in the event the court should issue the writ.

As stated by Mr. Justice BUFORD, the purpose of the Court in issuing the rule was to get the benefit of advisory argument on the question of the right of the municipality to maintain the proceedings without being joined by the Attorney General. The question therefore is whether a municipality upon discovering some person occupying an office in the city government, in possession of the office and records and files, who has usurped the powers and franchises of the office and refuses to surrender possession of it to the duly constituted or appointed official, or who having been duly elected or appointed to an office and the office has been abolished or the term to which the person was elected or appointed has expired or he has been removed by proper authority of the city government, yet refuses to vacate the office and continues to exercise the powers appertaining to it and discharge its functions and enjoy its privileges, may the city obtain upon its application to the proper court a writ of quo warranto to oust the usurper and test his right or title to the municipal office without obtaining the consent of the Attorney General?

The ancient common law writ and remedy of quo warranto has been obsolete in England for centuries. See Ames v. Kansas, 111 U. S. 449, 4 Sup. Ct. Rep. 437, 28 L. Ed. 482.

It was originally a civil writ at the suit of the Crown and not a criminal prosecution. Its place was supplied by an information in the nature of a quo warranto which in its origin was "a criminal method of prosecution, as well to punish the usurper by a fine for the usurpation of the franchise, as to oust him, or seize it for the Crown." 3 Bl. Com. 263.

Mr. Chief Justice WAITE in the case above cited said:

"Long before our Revolution, however, it lost its character as a criminal proceeding in everything except form, and was 'applied to the mere purposes of trying the civil right, seizing the franchise or ousting the wrongful possessor; the fine being nominal only'" and such "without any special legislation to that effect, has always been its character in many of the States of the Union."

In some States, while it is treated as criminal in form, it is used as a civil remedy only.

To justify the employment of quo warranto to try title to office, it is essential that the office be such as the law deems of a public nature. 32 Cyc. 1421.

The English view is that offices in private corporations are not of a public nature. See Reg. v. Mousley, 8 Q. B. 946. Such is also the view taken in Canada. *Ex parte* Gilbert, 15 N. B. 29 (cited in 51 L. R. A. [N. S.] 1127); Reg. v. Hespeler, 11 U. C. Q. B. 222.

In the case of Brooks v. State, 26 Del. (3 Boyce) 1, 79 Atl. Rep. 790, 51 L. R. A. (N. S.) 1126, the court, speaking through Mr. Justice WOOLEY, said in substance that the remedy by information in the nature of quo warranto succeeded and later superseded the original remedy and was in use long before 9 Anne, Ch. 20 (1710), and that statute was not the origin of the proceeding by information; that the statute was limited in its territorial scope and conferred upon the courts jurisdiction to employ the remedy by information with respect only to those offices of a public and political character originally derived from the King that were enumerated in the preamble to the Act. The learned Justice stated that the statute was never in force in this or any other American Colony, hence the remedy by information which was adopted in the State of Delaware by reference to that of the common law was the common-law

remedy by information in the nature of a writ of quo warranto and not the statutory remedy. There is no doubt, said he, "that the remedy by information may not be invoked for the redress of mere private grievances * * * and can only be invoked when wrong has been done to the public.. Hence, it follows, if a wrong complained of be the usurpation of an office, it must be the usurpation of an office public in character, otherwise the people cannot be called upon in their sovereignty to petition for its redress."

The court then proceeded to hold that the offices of a corporation created by special Act of the Legislature are offices of a public character within the meaning that the remedy by information in the nature of quo warranto lies against one who usurps such an office.

In the annotation to Brooks v. State, 51 L. R. A. (N. S.) 1127, it is stated that all other States except Massachusetts agree upon the point as stated in the Brooks case. See also Davidson v. State, 20 Fla. 784. In that case the office involved was the presidency of a benevolent corporation. Mr. Chief Justice RANDALL, speaking for the Court in that case, said: "Tested by the principles underlying the jurisdiction in question, an intrusion into an office of a merely private corporation may in this country be corrected by information with the same propriety as in cases of *public* or *municipal corporations* (italics supplied). Since in both cases there is an unfounded claim to the exercise of a corporate franchise amounting to a usurpation of the privilege granted by the State. Indeed, the intrusion into a corporate office, created for the government and exercise of the franchise, cannot in principle be distinguished from a usurpation of the franchise itself."

It is only by virtue of a statute, when the Attorney General refuses to begin the proceedings, that a person

other than the Attorney General may file an information or institute an action in the name of the State to determine a claimant's right to the office. See 5447, C. G. L., 1927 (3582, R. G. S., 1920).

Now for the purposes of a proceeding in quo warranto, or information in the nature of quo warranto, all corporations private or municipal are upon a parity so far as the same may be regarded as deriving their powers or franchises from the State which renders the usurpation of an office in such corporation a matter of a public nature. It follows therefore that if the Attorney General should decline to file an information to determine a claimant's right to an office in a corporation which office it is alleged is occupied wrongfully, or usurped by another, the person claiming the office or the corporation whose right it is to direct its corporate affairs through its officers may under the provisions of the Statute, Sec. 5447, *supra,* file an information or institute an action in the name of the State against the person exercising the office setting up its own claim. Such is the holding in Beverly v. Hattiesburg, 83 Miss. 621, 36 South. Rep. 74.

The office of Chief of Police of the City of St. Petersburg exists by virtue of the power of the city to create it, and the proceedings should be taken in the name of the power from which the office proceeds. Throop on Public Officers, Sec. 779.

The case of State, *ex rel.* Kansas City v. East Fifth St. Ry. Co., 140 Mo. 539, 41 S. W. Rep. 955, was one in which a franchise granted by the city for a street railway was sought to be forfeited. The court, speaking through Mr. Justice BURGESS, said: "The city granted the franchise in the interest of the public and we see no reason why she should not be relator in the proceeding to have the franchise

forfeited in the interest of the public also, if the facts and circumstances in proof justify such a result."

On the theory that the City of St. Petersburg, a municipal corporation, is the person injuriously affected by the conduct of Noel, the chief of police or person alleged to be usurping that office, the city is the proper person to bring the action under Section 5447, C. G. L., *supra*. See State v. Huller, 23 N. M. 306, 168 Pac. Rep. 528.

The contention that the phrase "any person claiming title to an office" as used in the statute does not embrace for the purposes of this subject municipal as well as private corporations is too refined and technical to be sound as applied to a remedy provided by law for the ousting of a person from the occupation of an officer or the exercise of a franchise of a public nature to which he has no authority.

I think that the city has the authority in the circumstances to bring the information without joining the Attorney General.

Let the information be filed and proper process be issued.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD and BROWN, J. J., concur specially.

BUFORD, J., dissents.

WHITFIELD, J. (concurring specially).—As the writ of quo warranto is a civil remedy, Section 5446 (3581), Compiled General Laws, and as attorneys-at-law practicing in the courts of Florida are officers of the court, it seems that under the statute of 9 Anne (1708), which is in force in this State, Section 87 (71), Compiled General Laws, such an officer may institute quo warranto proceedings in the name of an interested party as relator in the court having jurisdiction of the subject matter and power to issue the

writ, the relator being not an intermeddler but a real party in interest.

DAVIS, C. J., and TERRELL and BROWN, J. J., concur.

BROWN, J. (concurring specially).—While I concur in most that is said by Mr. Justice ELLIS, I doubt if Section 5447, C. G. L., can be applied to a city. I think, however, that without that statute, the city, under the broad general principles relating to this remedy, can resort to it in such a case as this. My views of the general subject are stated in State v. City of Sarasota, 92 Fla. 563, 109 So. 473, and State v. City of Stuart, 120 So. 335.

BUFORD, J. (dissenting).—The City of St. Petersburg in the name of the State of Florida filed in this Court an information in the nature of a quo warranto, the purpose of which was to test the right of the respondent, R. H. Noel, to continue to occupy the office and perform the functions of Chief of Police of the City of St. Petersburg.

This Court issued a rule *nisi* to Noel to show cause why writ of quo warranto should not issue in due course. It was the purpose of the Court to get the benefit of adversary argument on the question of the right of the municipality to maintain the proceedings without the intervention of the Attorney General of the State.

So the question which we must determine is: May a municipality institute quo warranto proceedings in this Court without being joined by the Attorney General, the record showing that the Attorney General has declined and refused to institute the proceedings in the name of the State, *ex rel.* the Attorney General.

It is needless to review the history of the writ of quo warranto.

The relator's right to maintain the proceedings must be found either in the common law or in our statutes.

It is conceded that under the provisions of common law the relator could not be heard to maintain the proceedings unless it be construed that such right accrued under Section IV of the Statutes of Anne in regard to mandamus and quo warranto. This section was as follows:

"IV. And be it further enacted by the authority aforesaid, that from and after the said first day of Trinity Term, in case any person or persons shall usurp, intrude into, or unlawfully hold and execute any of the said offices or franchises it shall and may be lawful to and for the proper officer in each of the said respective courts, with the leave of the said courts respectively, to exhibit one or more information or informations in the nature of a quo warranto, at the relation of any person or persons desiring to sue or prosecute the same, and who shall be mentioned in such information or informations to be the relator or relators against such person or persons, so usurping, intruding into, or unlawfully holding and executing any of the said offices or franchises, and to proceed therein in such manner as is usual in cases of information in the nature of a quo warranto; and if it shall appear to the said respective courts, that the several rights of divers persons to the said offices or franchises may properly be determined on one information, it shall and may be lawful for the said respective courts to give leave to exhibit one such information against several persons in order to try their respective rights to such offices or franchises, and such person or persons, against whom such information or informations in the nature of a quo warranto shall be sued or prosecuted shall appear and plead as of the same term or sessions in which the said information of informations shall be filed, unless the court where such information shall be filed shall give further time to such person or persons, against whom such information shall be

exhibited, to plead; and such person or persons who shall sue or prosecute such information or informations in the nature of a quo warranto, shall proceed thereupon with the most convenient speed that may be; any law or usage to the contrary thereof in any wise notwithstanding." (12 Statutes at Large, 8 Anne to 12 Anne, 190).

Under this section it became lawful "to and for the *proper officer* in each of the said respective courts, with leave of the said courts respectively, to exhibit one or more information or informations," etc. This section did little if any more than to establish the procedure which is warranted under Section 3582, R. G. S., 5447 C. G. L. If it may be construed to have established a right to the use of the remedy beyond that authorized by our statutes, then our statute has the effect of abrogating such excess. This was recognized in State, *ex rel.* Watkins v. Fernandez, 106 Fla. 779, 143 Sou. 638, and in State, *ex rel.* Bauder v. Markle, 107 Fla. 742, 134 Sou. 638.

But here we have a city which is a mere auxiliary of the State Government, an instrumentality established as a public institution for limited self-government and local administration of the affairs of the State, an instrumentality which is established, appointed and empowered for that purpose, and is to that extent an agency of the State assuming to exercise the right of sovereignty which has not been delegated to it.

In State, *ex rel.* v. Bryan, 50 Fla. 293, 39 Sou. 929, we said: "Under the laws of this State, the Attorney General is as much the representative of the State of Florida in the Supreme Court, as the King's Attorney General is his representative in the Court of King's Bench; indeed, more so, as in the Court of King's Bench there are for certain causes representatives of the King's other than the Attorney

General; while here it is his sole duty to 'appear in and attend to, in behalf of the State, all suits or prosecutions, civil or criminal, or in equity, in which the State may be a party, or in anywise interested, in the Supreme Court of this State.' Acts of 1845, page 5.

"The office of Attorney General is, in many respects, judicial in its character, and he is clothed with a considerable discretion. The appropriate and proper function of courts is to hear causes that the citizens of the State may see proper to institute, and there are but few cases in which they can exercise a discretion to refuse to hear them. The Attorney General being intimately associated with the other departments of the government, being as well the proper legal advisor of the Executive as the legislative department of the government, it is highly proper, whenever the right to a public office is to be tried, that he should be clothed with a discretion in the premises which should be exercised at least independently of the courts in actions of this character."

Further in the same opinion, it is said: "This discretion is vested in the Attorney General; if he exercises it improperly, there is another tribunal, the people, or their grand inquest, the Assembly, to punish him. Also see Robinson v. Jones, 14 Fla. 256; State v. Jones, 16 Fla. 306; Lake v. Palmer, 18 Fla. 501, text 506, *et seq.;* State v. Anderson, 26 Fla. 240, text 251, *et seq.;* especially 253, 8 South. Rep. 1; Buckman v. State, 34 Fla. 48, text 56, *et seq.,* 15 South. Rep. 697, S. C. 24 L. R. A. 806."

Relator by its counsel stated at the bar of this Court that for authority to institute and maintain this proceeding, it relies on the provisions of Sec. 3582, R. G. S., 5447 C. G. L., which is as follows:

"Right of claimant upon refusal of Attorney General.—

Any person claiming title to an office which is exercised by another shall have the right, upon refusal by the Attorney General to institute proceedings in the name of the State upon such claimant's relation, or upon the Attorney General's refusal to file a complaint setting forth his name as the person rightfully entitled to the office, to file an information or institute an action in the name of the State against the person exercising the office, setting up his own claim. In this case the court is authorized and required to determine the right of the claimant to the office, if he so desires. However, in this, as well as in all other proceedings of this character, no person shall be adjudged entitled to hold an office except upon full proof of his title to the office."

The language of this section clearly limits its scope to those cases where one person is exercising the powers, privileges and functions of an office under claim of title to the office and another person claims a paramount or superior title to the same office. An adjudication between the parties in such proceedings is no bar to the rights of the State where the Attorney General does not institute the proceedings and the State is not bound thereby. Sec. 3583, R. G. S., 5348, C. G. L.

In the case of Lake, *et al.*, v. Palmer, *et al.*, 18 Fla. 501, the Attorney General filed information in the nature of *quo warranto* in the name and by the authority of the State of Florida on the relation of the appellees to try the right and title of the appellants to have and exercise the franchises and powers appertaining to the Board of Health of the City of Fernandina, and there the Court said:

"The primary right to the office is in the State, and unless the party exercising its franchises shows a right to it he is usurper and must be ousted."

In Coen v. Lee, Comptroller, *et al.,* opinion filed November 13, 1933, and in which rehearing was granted, reported in ........ Sou. ........, we said:

"The Constitution of 1885 is a revision of the Constitution of 1868 and to make it clear that a complete change was intended to be made in the organic law respecting legislation concerning municipalities, the Constitution of 1885 not only by its Section 24, Article III, expressly recognizes the power of the Legislature in the absence of organic prohibition or limitations, to enact special or local laws as well as general laws respecting municipalities, but there is incorporated in the organic law of 1885, Section 8, Article VIII, which expressly states that 'The Legislature shall have power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time.'

"The power of the Legislature respecting municipalities as stated in Section 8, Article VIII, is merely declaratory of legislative power that exists if not restrained by organic law, and does not take from the Legislature its inherent power to provide for supervision over the municipal corporations established by law. This power of supervision over municipalities may be exercised through administrative State officers and their lawful employees *within the limitations prescribed by law,* to the end that municipal abuses may be prevented and corrected without unduly encroaching upon the rights of citizens or upon the lawful exercise of municipal functions by the officers provided for that purpose. Section 3089 (1956), Compiled General Laws, 1927, does not violate Section 8, Article III, of the State Constitution."

While under the organic provision above referred to the Legislature may establish municipal corporations and provide for their government and thus delegate to the munici-

palities and their officers certain attributes of sovereignty the State is not thereby divested of those powers of sovereignty with which it is invested for the welfare and protection of its inhabitants.

A municipal corporation constitutes a definite entity and is set apart from the other parts of the State for the purposes of limited local self-government. As such it possesses such powers and is burdened with such duties as may be granted and imposed upon it by the State acting through the Legislature within the limitations of organic law. See Loeb v. City of Jacksonville, 101 Fla. 429, 134 Sou. 205.

Under our Constitution the Legislature may establish municipalities where conditions have been created and have come into being which warrant the exercise of municipal authority. In connection with the establishment of the municipality, or at any time thereafter, the State through the Legislature may create or abolish offices and when it creates a municipal office it may even designate the person to fill the office or provide for the appointment or election of such officer. See State, *ex rel.* v. Johnson, 102 Fla. 19, 135 Sou. 816.

In Loeb v. City of Jacksonville, *supra,* Mr. Justice ELLIS, speaking for this Court, said:

"A city is a mere auxiliary to the State government. It is a public institution for self-government and local administration of the affairs of the State. It is appointed and empowered for that purpose and is therefore an agent of the State for local administration of governmental affairs. See Kaufman v. Tallahassee, 84 Fla. 634, 94 South. Rep. 697, 30 A. L. R. 471; Keggin v. Hillsborough Co., 71 Fla. 356, 71 South. Rep. 372.

"In its public character a municipal corporation is the agent of the State acting as an arm of the sovereignty of

the State created for the convenient administration of the government exercising to the extent that they have been granted the governmental functions and powers of the State. Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; Malone v. Quincy, 66 Fla. 52, 62 South. Rep. 922, Ann. Cas. 1916 D 208.

"Governmental functions are those conferred or imposed upon the municipality as a local agency of limited and prescribed jurisdiction to be employed in administering the affairs of the State and promoting the public welfare. Bryan v. West Palm Beach, 75 Fla. 19, 77 South. Rep. 627."

I, therefore, think that the municipality without being joined by the Attorney General is without authority to institute the proceedings here proposed, and the Court should decline to assume jurisdiction to entertain the information.