QUESTIONS: 1. Is the use of a state aircraft in promoting a constitutional amendment pertaining to ethics a permitted use? 2. Are security guards permitted to accompany the Governor on such state aircraft?
SUMMARY: The Governor may use state aircraft during an effort to support the initiative process, Art. II, s. 3, State Const., when it is determined to be a state purpose, is incidental to a state purpose, or is in connection with the Governor's official duties. Security guards may, pursuant to s. 14.071, F.S. (1974 Supp.), accompany the Governor on such trips. Sections 287.16 and 287.161, F.S., authorize a state aircraft pool "for the purpose of furnishing executive air travel." These statutes have been implemented by the Department of General Services through rules that define the type and purpose of aircraft use that is authorized. The pertinent provisions are: 13B-1.01(1) All trips must be for such state purposes as determined by agency heads of the Executive . . . branches. (Emphasis supplied.) 13B-1.02 All passengers must be approved by an agency head, and the purpose of their travel must be such state business, or purposes incidental thereto as determined by such agency head; examples: (1) State officials and employees traveling in connection with their official duties . . . . (Emphasis supplied.) Although the discretion is not unbridled, the usage criteria revolve around a determination, by you as an agency head, that the purpose of the trip is for a state purpose, is incidental to a state purpose, or is in connection with your official duties as Governor. Article IV, s. 1, State Const. Each use of the state aircraft must be preceded by your factual determination that at least one of the above three purposes is being furthered. This conclusion is consistent with that of AGO 071-160 wherein I concluded that the use of the Governor's discretionary and contingency fund must be determined by you subject to auditing and judicial review. Also, in a November 14, 1972, letter to state attorney Shailer I concluded that a municipality could expend public funds to promote or defeat a proposed constitutional amendment. Guidance is, however, provided by considering whether the promotion of ethical standards for public officers and employees is within the purview or incidental to a state or public purpose. Article III, s. 18, State Const., provides the premise for a code of ethics to be applicable to state employees. Part III of Ch. 112, F.S. (1974 Supp.), as amended by Ch. 75-5, Laws of Florida, establishes statutory standards of conduct for public officers and employees that were legislatively deemed to be "essential to the proper conduct and operation of government" to protect "the public interest." The disclosure provisions of the statutes were deemed necessary "to preserve and maintain the integrity of the governmental process." These statutory provisions simply implement a legislatively declared state policy that is needed to "strengthen the faith and confidence of the people of the state in their government." E.g. Fritz v. Gordon, 517 P.2d 911 (Wash. 1974); Kanzelmeyer v. Eger, 329 A.2d 307 (Pa. 1974). A state purpose may, in this instance, properly be considered synonymous with a state or public purpose that has been legislatively declared to include ethical standards of conduct for public officers and employees. Cf. Loeb v. City of Jacksonville,134 So. 205 (Fla. 1931). Moreover, the purposes of ethical standards are to protect the public's franchise, to expose pecuniary demands and enrichments, and to inform the public. The right of the public to know the operative aspects of state officials and government is fundamental, paramount, beyond dispute, and should be considered the very foundation of democracy. Accordingly, your use of a state aircraft on trips to promote adoption of such a constitutional amendment would be consistent with applicable statutes and rules. The second question concerning security guards accompanying you on these trips is answered in the affirmative by s. 14.071, F.S. (1974 Supp.). This section mandates that the Department of Criminal Law Enforcement employ such personnel as necessary to provide and maintain the security of the Governor. The department has determined that this responsibility is properly performed only when the Governor is accompanied by a security agent at all times. This agency determination properly appears to be consistent with the legislative intent and mandate of s. 14.071.