STATE OF FLORIDA, ex rel., J. F. BAUDER, *Plaintiff in Error,* vs. FRANK MARKLE, *Defendant in Error.*

142 So. 822.

En Banc.

Opinion filed July 6, 1932.

Petition for rehearing denied August 4, 1932.

*E. F. P. Brigham,* for Plaintiff in Error;

*J. W. Watson, Jr.,* for Defendant in Error.

TERRELL, J.—In July, 1931, J. F. Bauder was removed as superintendent of Yacht Docks of the City of Miami and Frank Markle was appointed to succeed him. Bauder, in the name of the state exhibited his information in quo warranto in the Circuit Court of Dade County praying that Markle be required to show by what warrant or authority he holds and exercises the functions of said office and that he (Bauder) be reinstated therein. A demurrer to the information was sustained and writ of error was taken to that judgment.

It is urged that two questions be answered by this Court, viz: Was the superintendent of Yacht Docks of the City of Miami from which Bauder was removed, an office, right or franchise, title to which could be tested by quo warranto, and (2) Was Bauder removed as superintendent of Yacht Docks of the City of Miami in compliance with the terms of the City Charter governing such removals.

It is admitted that Bauder was duly appointed Superintendent of Yacht Docks in September, 1929, that he was summarily removed therefrom in July, 1931, that at the time of his appointment and removal, the superintendent of Yacht Docks was within the classified service of the City, that Bauder was at all times from the date of this appointment to the date of his removal, eligible and qualified for said appointment by having passed the civil service examination as required by the City Charter and that all appointments and removals from the classified service of the city were governed by the Civil Service provisions of the City Charter.

Section Sixty-two of the City Charter provides for the classified and the unclassified service of the City of Miami.

Section Sixty-five (a) of the city charter provides for suspensions and removals from the classified service, and Section Sixty-five (b) provides for removals from the classified service. The removal of Plaintiff in Error was made under Section Sixty-five (2) which is a follows:

"Any officer or employee in the classified service may be removed, suspended, laid off, or reduced in grade by the city manager or by the head of the department in which he is employed, for any cause which will promote the efficiency of the service; but he must first be furnished with a written statement of the reasons therefor and be allowed a reasonable time for answering such reasons in writing, which answer, if he so requests, shall (so far as the same is relevant and pertinent) be made a part of the records of the board; and he may be suspended from the date when such written statement of reason is furnished him. No trial or examination of witness shall be required in such case except in the discretion of the officer making the removal; in all cases provided for in this paragraph the action of the City Manager or head of the department shall be final."

We construe this provision of the city charter to mean that the City Manager or the head of the department in control of the civil service may remove, suspend, lay off, or reduce in grade any officer or employee in the classified service, for any cause which will promote the efficiency of the service, but before he is suspended, removed, laid off, or reduced in grade, the officer or *employee must be furnished with a written statement of the reasons therefor and be allowed a reasonable time for answering such reasons in writing.* His answer must be made a part of the record of the Civil Service Board if he so requests and he may be suspended from the date the written statement of the reasons for his suspension or removal are furnished him but not before. Trial and examination of witnesses in such cases will be had only in the discretion of the officer making the removal and in all cases his action shall be final, subject to review by the courts to determine whether or not the

jurisdictional facts existed as a predicate for the suspension or removal. State ex rel. Hatton vs. Joughin, 103 Fla. 877, 138 So. 392.

The mere fact that a trial and examination of witnesses is not required except in the discretion of the officer making the removal in no sense releases the requirement that written reasons be furnished the officer or employee for his removal and that he be given a chance to answer these reasons in writing. The fact of a trial and examination of witnesses is a mere incident to the removal but should be had in every case when the answer presents issues justly requiring it. The very purpose of requiring the reasons for removal and the answer thereto to be in writing is to develop the pith of the controversy, i.e. whether or not the removal "will promote the efficiency of the service." If it will not, there is no other ground for it.

In the removal brought in question, there was no attempt to comply with the quoted provisions of the city charter which are mandatory. Plaintiff in error was summarily dismissed from the service, no reasons were given for his dismissal nor was he given an opportunity to answer or be heard in his defense. This procedure was contrary to the civil service law of the city which requires that appointments be made on merit and fitness and when made removals can not be accomplished except for reasons stated in writing which the person suspended or removed must have a reasonable time to answer. People vs. White 220 App. Div. 347; 221 N. Y. S. 559; Brockaw vs. Burk 89 N. J. L. 132, 98 Atl. 11; Thomas vs. Municipal Council of City of Lowell, 227 Mass. 116, 116 N. E. 497; People ex rel. Beck vs. Board of Aldermen of City of Buffalo, 42 N. Y. Suppl. 545, 18 Misc. Rep. 533; Truitt v. City of Philadelphia, 221 Pa. 331, 70 Atl. 757.

The city charter specifically provides that no person shall be appointed, reduced, or removed or in any way dis-

criminated against because of political opinion or affiliations (Sections 48 and 69). In view of these and other requirements defining prerequisites for appointment, we cannot escape the conclusion that the saving value of the civil service law inheres in the fact that it safeguards the faithful, honest, and competent official from removal for unworthy reasons and in doing this, promotes the efficiency of the service. To remove an officer or employee ''with a view of increasing efficiency and economy'' and immediately appointing another to succeed him as was done in this case is not compliance with either the letter or spirit of the law.

As to whether or not the position of superintendent of Yacht Docks of the City of Miami is an office or an employment; it is unnecessary for us to decide in this case. The common law writ of quo warranto was in the nature of a writ of right and was directed by the king against any one who claimed or usurped an office, franchise, or liberty, to enquire by what authority he supported his claims. As applied in this jurisdiction, all reference is to the common law writ which has given place to the information in the nature of quo warranto, the scope of which has not been changed by statute.

Section four of our declaration of rights requires that the courts of this state shall at all times be open to any person who has been injured in lands, goods, person or reputation, that he may have remedy by due course of law. Under the facts of this case, we know of no other recourse by which plaintiff in error may ''have remedy by due course of law'' and if he was not the holder of an office he was at least the holder of a ''liberty'' or a quasi official right that he could test his claim or title to by quo warranto.

It follows that the judgment below must be and is hereby reversed.

BUFORD, C.J. AND WHITFIELD, ELLIS AND DAVIS, J.J., concur.

BROWN, J., dissents.

BROWN, J., Dissenting.—As I understand this record, neither the charter nor the ordinances of the City of Miami, nor any statute of the State, create any such office or franchise as Superintendent of Yacht Docks of the City of Miami. The relator was merely an employee of the City, holding a position or employment under the Director of Public Service, which city officer, thus designated, was by the city charter placed in charge of and made responsible for the maintenance and operation of all the city's docks and anchorage basins. I am inclined to the view that the Circuit Judge was correct in holding that the relator was an employee rather than an officer and that no such office or franchise is involved in this case as can be made the subject of quo warranto proceedings. State ex rel. Clyatt v. Hocker, 39 Fla. 477, 22 So. 721; State ex rel. Holloway v. Sheats, 78 Fla. 583, 83 So. 508; Dade County v. State, 95 Fla. 465, 116 So. 72; 46 C. J. 928; 23 Am. & Eng. Encyc. of Law, 601, 632.