STATE, *ex rel.* W. POOSER, and C. W. ALLEN, v. W. W. WESTER, *et al.*

170 So. 736.
Division B.
Opinion Filed October 30, 1936.
Rehearing Denied November 18, 1936.

50

*Wm. W. Flournoy,* for Relators;
*B. L. Solomon* and *Carter & Pierce,* for Respondents.

TERRELL, J.—On October 7, 1936, W. Pooser as a candidate for the office of State Senator from the Fourth Senatorial District (Jackson County) and W. Pooser and C. W. Allen as citizens, residents, and taxpayers of Jackson County filed an information in quo warranto in this court in which they allege that the primary elections held in said county June 2nd and June 23rd were nullities, void, and ineffectual, and that each and all the nominations for the respective county offices made in said primary elections are likewise void and ineffectual. A rule *nisi* was issued by this court directed to W. W. Wester and other respondents nominated in said primary election commanding them to show cause why writ of quo warranto should not be issued to them pursuant to said information.

Respondents move to discharge the rule *nisi* on the ground of laches and the further ground that the Attorney General having refused to permit the use of his name, the proceeding cannot be maintained by relators as citizens and tax-payers.

A majority of the court do not think it necessary to answer the latter question in this proceeding. It is not out of place to state, however, that under our practice, quo warranto is a remedial as well as a prerogative writ and that this court will not refuse to extend its use on proper showing made. In State, *ex rel.* Watkins, v. Fernandez, 106 Fla. 779, 143 So. 638, and State, *ex rel.* Bauder, v. Markle, 107 Fla. 742, 142 So. 822, we reviewed many instances in which the common law writ of quo warranto had been extended and employed for purposes other than for which it was originally conceived.

In the latter case, we permitted its use to test the claim of Bauder to a "liberty" or "quasi official right" and in State, *ex rel.* Watkins, v. Fernandez, we permitted its use to test the right to nomination for office in a primary election. We permitted its use in both these cases on the theory that the law will not permit a wrong to go without a remedy, which principle was reincorporated in Section 4, Declaration of Rights, Constitution of Florida. One of the high prerogatives of a court of justice is to keep this principle of the law dynamic by construing it to provide a remedy for every new wrong that arises. The test of whether or not old remedies will be extended to the wrongs that constantly arise from new conditions is not what the remedy extended to in the time of Edward the First or George the Third, but whether or not the one complaining has suffered an injury in his "lands, goods, person, or reputation" that should in right and justice be atoned for. If this is not the rule, then

the Equitable Maxim and Section 4 of the Declaration of Rights are nothing more than a gesture and had as well be consigned to the pictograph corner in the museum along with the Code of Hammurabi and the tablets that Moses brought down from the mountain.

We have examined Newman v. United States, *ex rel.* Frizzell, 238 U. S. 537, 35 S. Ct. 881, 59 L. Ed. 1446; Toncray v. Budge, 14 Idaho 621, 95 Pac. 26; State, *ex rel.* Clawson, v. Bell, 169 Ind. 61, 82 N. E. 69; Hudson v. Conklin, 77 Kan. 764, 585; Sevigny v. Russell, 260 Mass. 294, 157 N. E. 601; State v. City of Sarasota, 92 Fla. 563, 109 So. 473; State, *ex rel.* Moodie, v. Bryan, 50 Fla. 293, 39 So. 929; State, *ex rel.* Landis, v. Kress and Co., 115 Fla. 189, 155 So. 823; and State, *ex rel.* City of St. Petersburg, v. Noel, 114 Fla. 175, 154 So. 214, relied on by respondents, and find nothing in conflict with this rule.

Relators do not rely on the violation of a private or personal right for relief but they say that a public right has been prostituted. They contend that the illegal elections held in the manner outlined in the information for quo warranto not only affected them unlawfully but that they vitally affected the welfare, franchises, prerogatives, and liberties of all the people of the State. They contend further that their primary object is the enforcement of a public right and being so the public is the real party in interest and that they or any other citizen or taxpayer are proper parties to the proceeding. They rely on Florida C. and P. R. Co. v. State, *ex rel.* Town of Tavares, 31 Fla. 482, 13 So. 103; Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963; Attorney General v. Blossom, 1 Wis. 317; Attorney General v. Railroad Companies, 35 Wis. 425, to support this contention.

The doctrine of these cases is generally approved in this country and it is well settled that when the enforcement

of a public right is sought, the people are the real party to the cause. The relator need not show that he has any real or personal interest in it. It is enough that he is a citizen and interested in having the law upheld, but this, like all other rules has its limitations.

In the case at bar, relators as citizens and taxpayers, seek to invalidate the elections held in Jackson County, June 2 and June 23, and to oust the nominees for county offices in said county on the ground that in the primary election held June 2, a total of 8226 persons voted, 3645 of whom were duly registered and qualified to vote but that 4581 of whom were not qualified because they had failed to register and pay their poll taxes as the law requires, and that in the primary election held June 23, a total of 7503 persons voted, 3645 of whom were duly registered and qualified to vote but that 3858 of whom were not qualified and therefore voted illegally.

There is no charge that the elections were not legally called, advertised, held, and canvassed. It is merely charged that persons were permitted to vote who were not qualified to vote and notwithstanding thousands voted who were qualified and neither election is charged to be otherwise irregular, it is contended that both should now be adjudged to be void· and as if not held.

The law (Section 299, Revised General Statutes·of 1920, Section 355, Compiled General Laws of 1927) requires that nominations for elective State, Congressional, and County Offices for United States Senator, Congressional, State, and County Executive Committees be made by primary election. The right to vote is prohibited to those who have not registered and paid their poll taxes unless exempt therefrom by law (Section 371, Compiled General Laws of 1927) and no

elector is permitted to vote in any precinct other than the one in which he is registered.

Under the law as thus stated, every person who voted without having registered and paid his poll tax was an illegal voter and had no right to present himself at the polls for that purpose. It is absurd and ridiculous to contend that a candidate or a citizen has no right to relief in the face of such flagrant violation of the law. We are of the view, however, that he who seeks to correct such violations must move against them seasonably and appropriately.

This court is committed to the doctrine that extraordinary relief will not be granted in cases where it plainly appears that although the complainant party may be ordinarily entitled to it, if the granting of such relief in the particular case will result in confusion and disorder and will produce an injury to the public which outweighs the individual right of the complainant to have the relief he seeks. Bronson v. Board of Public Instruction, Osceola County, 108 Fla. 1, 145 So. 833; Gwynn v. Hardee, 92 Fla. 543, 110 So. 343.

This rule is particularly applicable to the facts in this case. Relators waited more than four months to seek relief; at the time the information was filed, the general election in which the nominees were required to be voted for was less than a month in the future; they do not allege that they are affected except as every other citizen is affected; it is not alleged that the illegal votes cast can be segregated from the legal ones and if they could, that when counted, the result of the election would be changed. It is not alleged that one of the respondents had any part in the illegal voting or even knew of it; no reason is assigned for the delay in moving against it and in fact we see nothing that could result but confusion and disorder.

In fine, nothing is relied on to vitiate the elections except

that some illegal votes were cast. The rule is settled in this state that where an election is otherwise valid, it will not be held void because illegal votes were cast. It must be shown that the illegal votes will change the result of the election. State, *ex rel*. McClenny, v. County Commissioners of Baker County, 22 Fla. 29; State, *ex rel* Clark, v. Klingensmith, 121 Fla. 297, 163 So. 704. It is entirely possible that a recount of all the legal votes cast would show no change in the result whatever. It is not alleged that it would nor is it alleged that there was any attempt to suppress or thwart the popular will.

For the reasons announced herein we are driven to the conclusion that the motion to discharge the rule *nisi* should be granted.

It is so ordered.

WHITFIELD, C. J., concurs.

ELLIS, P. J., agrees to the conclusion on the ground of laches.

BROWN, BUFORD and DAVIS, J. J., concur specially.

BROWN, J. (concurring).—I concur in the conclusion reached for the reasons stated in the last four paragraphs of the opinion.

DAVIS, J. (concurring specially).—In addition to the objection of laches, I think the relief sought should be denied because it is now too late to afford to defendant the right to have a trial of the issues of fact in this cause before a jury as the law contemplates to be herein demandable in a quo warranto case (even when first begun in the Supreme Court). But I do not think it is necessary, as a matter of law, to show that illegal votes cast actually did change the result of the election. If as a matter of fact enough illegal votes are actually cast to have changed the election, they are presumed to have been cast for that purpose

and the law will then throw the result out in its entirety for want of a better remedy, because it is impossible to separate the legal votes from the illegal votes. With the qualification stated above I concur in the opinion of Mr. Justice Terrell.

BUFORD, J., concurs.

### ON PETITION FOR REHEARING

PER CURIAM.—The information in quo warranto herein seeks to have the court adjudge that the primary elections held in Jackson County in June, 1936, are "nullities, void and ineffectual" and that the nominations made therein are "nullities, void and ineffectual," because, it is alleged, large numbers of illegal ballots were cast and counted in said primary elections.

The court has properly held that the casting and counting of illegal ballots at a primary election which was duly called and was legally held in the county except in the receipt and counting of illegal ballots even in excess of the valid ballots cast, did not on the showing made, render the primary election throughout the county *null and void.*

If for any reason it may, upon a sufficient showing, be adjudged that there is a failure of nominations in the county of party candidates for the offices voted for in the primary, the statute authorizes the appropriate executive committee of the party to fill vacancies in nominations of party candidates. See Sec. 411 (354) C. G. L., as amended by Chapter 13761, Acts of 1929.

Whatever may be the legal effect of the alleged wholesale casting and counting of illegal ballots in the primary election, the proceeding as here invoked cannot now remedy the alleged illegality in the conduct of the primary election.

Rehearing denied.

Whitfield, C. J., and Ellis, Terrell, Brown, Buford and Davis, J. J., concur.