302 So.2d 811 (1974)
STATE of Florida ex rel. Floyd T. CHRISTIAN, Relator,
v.
The Honorable T. Edward AUSTIN et al., Respondents.
No. W-312.
District Court of Appeal of Florida, First District.
November 5, 1974.
*812 Joseph C. Jacobs and E.C. Deeno Kitchen of Ervin, Varn, Jacobs & Odom, Tallahassee, and Robert L. Floyd and Michael A. Pohl of Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for relator.
Robert L. Shevin, Atty. Gen., Raymond L. Marky, Asst. Atty. Gen., T. Edward Austin, Jr., Aaron K. Bowden, and Robert S. Willis, Jacksonville, for respondents.
PER CURIAM.
We here consider a Petition for Writ of Quo Warranto filed by Relator. A chronological recitation of the events leading to the filing of the Petition will be helpful in understanding the issues to be resolved.
On March 4, 1974 the Governor issued Executive Order No. 74-19 reciting, inter alia, that Honorable Harry Morrison, the duly elected State Attorney of the Second Judicial Circuit of the State of Florida had agreed to assist another State Attorney of the Thirteenth Judicial Circuit in advising a Statewide Grand Jury currently being impaneled, "thereby placing great demand on his resources" and that the said Honorable Harry Morrison had requested "that an outside State Attorney be assigned to carry forward the investigation of the Honorable Floyd T. Christian". Finding "that the ends of justice would best be served by the assignment of a State Attorney pursuant to Section 27.14, Florida Statutes", the Governor thereupon ordered "that the Honorable T. Edward Austin, State Attorney of the Fourth Judicial Circuit, hereinafter referred to as the `Assigned State Attorney', is hereby assigned to discharge the duties of the Honorable Harry Morrison, State Attorney of the Second Judicial Circuit, as such duties relate to allegations or reports concerning the Honorable Floyd T. Christian, Commissioner of the Department of Education" and "that the Assigned State Attorney and any one or more of his duly qualified Assistant State Attorneys, which Assistants may be designated by him, shall proceed forthwith to the Second Judicial Circuit and investigate and receive testimony and evidence concerning certain allegations or reports concerning the Honorable Floyd T. Christian, Commissioner of the Department of Education", and further "that during the period of this assignment or any extension thereof, the Assigned State Attorney and any one or more of his duly qualified Assistant State Attorneys shall be vested with all and singular the powers, duties and prerogatives of State Attorneys or Assistant State Attorneys as the case may be, by virtue of the Constitution, Laws of Florida and this Executive Order."
Pursuant to the directions of the above mentioned Executive Order, Honorable T. Edward Austin, State Attorney of the *813 Fourth Judicial Circuit, together with two of his Assistants who were appointed by him pursuant to statutory authority in the Fourth Judicial Circuit, proceeded to Leon County for the purpose of complying with the mandate of said Executive Order. While there, they investigated Relator, advised the Grand Jury duly impaneled in the Second Judicial Circuit, and interrogated witnesses before that Grand Jury, including Relator. During some of the Grand Jury proceedings the said Assigned State Attorney and his two Assistants appeared simultaneously, adducing evidence and interrogating witnesses; on other occasions only the Assistants were present (sometimes one and on other occasions both).
There is no contention that during the investigation and proceedings above mentioned the duly elected State Attorney of the Second Judicial Circuit, Honorable Harry Morrison, was disqualified or otherwise unable to act. The only reason revealed by the record for the assignment of the Assigned State Attorney is that recited in the Executive Order, to-wit: That the duly elected State Attorney of the Second Judicial Circuit had agreed "to assist the Honorable E.J. Salcines, State Attorney of the Thirteenth Judicial Circuit, in advising a Statewide Grand Jury currently being impaneled for other purposes, thereby placing great demand on his resources."
As a result of the investigation by the Leon County Grand Jury, which investigation was conducted with the assistance of Honorable T. Edward Austin and two of his Assistants, five indictments were returned against Relator.
Relator thereupon filed in this Court a Petition for Writ of Quo Warranto alleging that the above mentioned Executive Order was null and void and that therefore "when Respondent T. Edward Austin purported to install himself as State Attorney for the Second Judicial Circuit of Florida, under color of said Executive Order No. 74-19, said Respondent did thereby unlawfully usurp the office and franchise, lawful title to which was and remains in the Honorable Harry Morrison, duly elected State Attorney for said Second Judicial Circuit of Florida, who is, and at all times material hereto has been, present and not disqualified to exercise the powers of said office and franchise"; further alleging that the Assistant State Attorneys, Respondents Aaron K. Bowden and Robert Willis, were also unlawfully usurping the office and franchise of Assistant State Attorneys for the Second Judicial Circuit of Florida.
Rule Nisi was issued whereupon Respondents filed a Motion to Quash same, alleging that Relator, a private citizen and not a claimant to the office of State Attorney of the Second Judicial Circuit of Florida is without authority to bring a Quo Warranto proceeding and further that Relator had failed to demonstrate that the duly elected State Attorney of the Second Judicial Circuit and the Attorney General of the State of Florida had failed or refused to seek Quo Warranto. We granted the Motion to Quash on the ground that the Relator had not shown that the Attorney General nor the State Attorney had refused to act.
Relator thereupon filed a Petition for Rehearing attaching thereto a copy of a formal request to both the Attorney General and the State Attorney of the Second Judicial Circuit to bring the proceeding together with a formal written refusal by the Attorney General. The Petition alleged that the State Attorney had also orally refused to comply with the Relator's written request. By Motion heard and granted the recitations of the Petition for Rehearing and the exhibits attached thereto were made a part of the record and the Petition for Rehearing was granted. We thereupon vacated our Order of Quashal, affording Respondents an opportunity to file a return and briefs in support thereof.
This cause was then heard, after notice, on the issues made by the Petition and Return.
*814 The original common law writs quo warranto were issued in the year 1290 to challenge "by what authority" ("quo warranto") local lords were exercising once-royal franchises. 18 Edw. I: Quo Warranto (1290); T. Plucknett, Legislation of Edward I 45-50 (1949). The original writ, criminal in its nature, became obsolete, but at least since 1710 the common law has provided for the information in the nature of quo warranto. 9 Anne c. 20 (1710); Buckman v. State ex rel. Spencer, 34 Fla. 48, 15 So. 697, 699 (1894). The modern Florida writ was discussed in two law review articles published in 1951, the first written by former Chief Justice Alto Adams and Professor George J. Miller, and the second written by the then Attorney General, Richard W. Ervin, and Roy T. Rhodes. There we find the following:
"Quo Warranto. This writ, for historical reasons, still bears a criminal form even though today it is definitely civil in nature. Meaning `by what authority,' it tests the right to title to public office, including the title of nominee or official of a legally qualified political party, the right either to possess a franchise or to exercise an admittedly valid franchise in a certain manner, and the right to title to office in a domestic `private' corporation, which though not acting governmentally is nevertheless a creature of the State of Florida by virtue of its charter, or articles of incorporation.
"The writ is brought by the state on the relation of someone, usually our Attorney General; but, if he cannot be persuaded to apply for it, any private citizen with a specific personaal interest in the alleged usurpation of the office or franchise, whether he be a claimant of the former or adversely affected by the existence or misuse of the latter, can institute the action as relator. The judgment either quashes the writ or ousts the officeholder or holder of the franchise. In this latter instance the judgment of ouster may be partial or total; that is, it may forbid exercise of the franchise in a certain manner, or it may proscribe any and all action thereunder on the ground that the purported franchise does not exist." Adams & Miller, Origins and Current Florida Status of the Extraordinary Writs, 4 U.Fla.L.Rev. 421, 453 (1951).
* * * * * *
"The modern information in the nature of a quo warranto has been defined as an information, criminal in form, presented to a court of competent jurisdiction by the attorney general for the purpose of correcting the usurpation, misuse, or nonuser of a public offic or corporate franchise. In its broadest sense quo warranto is a writ of inquiry as to the warrant for doing the act complained of; it lies to test the right of a person to hold an office or franchise or to exercise some right or privilege the peculiar powers of which are derived from the state. Blackstone defines quo warranto as a high prerogative writ, in the nature of a writ of right for the King, which lay against him who obtained or usurped any office, franchise, or liberty of the Crown, and which also lay in case of nonuser or long neglect of a franchise or in case of misuser or abuse of it." Ervin & Rhodes, Quo Warranto in Florida, 4 U.Fla.L.Rev. 559 (1951) (Footnotes omitted).
In their briefs and during oral arguments Respondents conceded that notwithstanding the language of Rule 4.5, subd. c(1), Florida Appellate Rules, and F.S. 80.01, the power and authority of an Assigned State Attorney, if it is to be challenged, should be tested in a direct proceeding by way of quo warranto, citing Hart v. State, 1940, 144 Fla. 409, 198 So. 120.
In the Hart case the Supreme Court said:
"Lastly, we reach the attack made by the appellant on the authority of the State Attorney of the Second Judicial Circuit to sign the information and conduct the prosecution of the case which was pending in the Third Judicial Circuit when *815 the State Attorney of the latter circuit was present and not disqualified. * * * Not wishing to beg the question and despite the forceful manner in which the merits of the contention are presented, we will dispose of the matter by deciding whether the authority of a state attorney, assigned under the statute (4743 C.G.L. 1927) [predecessor to § 27.14, F.S. 1973], may be challenged collaterally or such an assigned officer's power should be determined by proceeding in quo warranto. (brackets added)
* * * * * *
"* * * We think that in the interests of the State, and without depriving any defendant of any right to which he might be entitled, such suspicion should not be cast upon the executive orders of the Governor in this fashion, but that if the power and authority of an assigned state attorney is to be tested, it should be done in direct proceedings by quo warranto." (198 So. at pages 123-125)
(See also Johns v. State, 1940, 144 Fla. 256, 197 So. 791)
Respondents urge however, that conceding quo warranto to be the correct avenue of procedural approach, nevertheless Relator is not a proper party to initiate same.
Such contention was directly answered by Justice Terrell in State ex rel. Pooser v. Wester, 126 Fla. 49, 170 So. 736 (1936), wherein he said:
"Respondents move to discharge the rule nisi on the ground of laches and the further ground that the Attorney General having refused to permit the use of his name, the proceeding cannot be maintained by relators as citizens and taxpayers.
"A majority of the court do not think it necessary to answer the latter question in this proceeding. It is not out of place to state, however, that under our practice, quo warranto is a remedial as well as a prerogative writ, and that this court will not refuse to extend its use on proper showing made. In State ex rel. Watkins v. Fernandez, 106 Fla. 779, 143 So. 638, and State ex rel. Bauder v. Markle, 107 Fla. 742, 142 So. 822, we reviewed many instances in which the common-law writ of quo warranto had been extended and employed for purposes other than for which it was originally conceived.
"In the latter case, we permitted its use to test the claim of Bauder to a `liberty' or `quasi official right,' and in State ex rel. Watkins v. Fernandez, we permitted its use to test the right to nomination for office in a primary election. We permitted its use in both these cases on the theory that the law will not permit a wrong to go without a remedy, which principle was reincorporated in section 4, Declaration of Rights, Constitution of Florida. One of the high prerogatives of a court of justice is to keep this principle of the law dynamic by construing it to provide a remedy for every new wrong that arises. The test of whether or not old remedies will be extended to the wrongs that constantly arise from new conditions is not what the remedy extended to in the time of Edward the First or George the Third, but whether or not the one complaining has suffered an injury in his `lands, goods, person, or reputation' that should in right and justice be atoned for. If this is not the rule, then the equitable maxim and section 4 of the Declaration of Rights are nothing more than a gesture and had as well be consigned to the pictograph corner in the museum along with the Code of Hammurabi and the tablets that Moses brought down from the mountain.
"We have examined Newman v. United States ex rel. Frizzell, 238 U.S. 537, 35 S.Ct. 881, 59 L.Ed. 1446; Toncray v. Budge, 14 Idaho 621, 95 P. 26; State ex rel. Clawson v. Bell, 169 Ind. 61, 82 N.E. 69, 13 L.R.A.(N.S.) 1013, 124 Am.St. Rep. 203; Hudson v. Conklin, 77 Kan. 764, *816 93 P. 585; Sevigny v. Russell, 260 Mass. 294, 157 N.E. 601; State v. City of Sarasota, 92 Fla. 563, 109 So. 473; State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 So. 929; State ex rel. Landis v. Kress & Co., 115 Fla. 189, 155 So. 823, and State ex rel. City of St. Petersburg v. Noel, 114 Fla. 175, 154 So. 214, relied on by respondents and find nothing in conflict with this rule.
"Relators do not rely on the violation of a private or personal right for relief, but they say that a public right has been prostituted. They contend that the illegal elections held in the manner outlined in the information for quo warranto not only affected them unlawfully, but that they vitally affected the welfare, franchises, prerogatives, and liberties of all the people of the State. They contend further that their primary object is the enforcement of a public right and being so the public is the real party in interest and that they or any other citizen or taxpayer are proper parties to the proceeding. They rely on Florida C. & P.R. Co. v. State ex rel. Town of Tavares, 31 Fla. 482, 13 So. 103, 20 L.R.A. 419, 34 Am.St.Rep. 30; Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963, Ann.Cas. 1914B, 916; Attorney General v. Blossom, 1 Wis. 317; Attorney General v. Railroad Companies, 35 Wis. 425 to support this contention.
"The doctrine of these cases is generally approved in this country and it is well settled that when the enforcement of a public right is sought, the people are the real party to the cause. The relator need not show that he has any real or personal interest in it. It is enough that he is a citizen and interested in having the law upheld, but this, like all other rules of law has its limitations." (170 So. at 737-738; Emphasis added)
Respondents cite a prior decision of this Court, Washington County Kennel Club v. State, Fla.App.1st 1958, 107 So.2d 176. However, we find that case not to be authority for Respondents' position here. There a private citizen, recited by the Court to be "without apparently possessing any real interest" sought to question by way of quo warranto the corporate status of a private corporation. This Court differentiated such a factual situation from that in State ex rel. Pooser v. Wester, supra, agreeing that the rule there expressed by Justice Terrell reflected a fundamentally sound principle, saying:
"The proper holding of an election is so vital in a democracy that we feel that any citizen has a real stake in seeing that elections are lawfully held  so that he should be able to institute quo warranto proceedings to test the validity of the election, even though the Attorney General may refuse the use of his name.
"The present case presents a quite different situation, for here a citizen, without apparently possessing any real interest, questions the corporate status of a private corporation. If such a person is permitted to file a quo warranto proceeding on his own relation, one cannot help but envision the door that would be opened to busybodies who might make a practice of investigating many private corporations in order to run down some technical defect in the incorporation and, by threatening to file quo warranto proceedings, develop a considerable nuisance value and perhaps secure substantial settlements." (107 So.2d at page 178)
Thus, this Court, in the Washington County Kennel Club case, made a clear distinction between the interest that a private citizen has in those filling an elective office and persons without apparently possessing any real interest, questioning the corporate status of a private corporation. It is apparent therefore that said case is authority for the position here urged by Relator, as the basic issue before us is the propriety of Respondent Honorable T. Edward Austin discharging the duties, under the particular circumstances of this case, *817 of an elected official of the Second Judicial Circuit of Florida.
Accordingly, we hold that Relator Christian is a proper party under the circumstances of this case to institute and maintain this direct proceeding in Quo Warranto. We therefore turn to the primary issue, the propriety of the assignment of Respondent, Honorable T. Edward Austin, by the Executive Order here challenged.
The pertinent statutes are Florida Statutes 27.14, 27.15 and 27.16. They provide in material part, as follows:
"27.14 Assigning state attorneys to other circuits.  If any state attorney shall be disqualified to represent the state in any case pending in the courts of his circuit, or if for any other good and sufficient reason the governor of the state thinks that the ends of justice would be best served by an exchange of state attorneys, the governor may require an exchange of circuits or of courts between such state attorney and any other state attorney of the state, or may assign any state attorney of the state to the discharge of the duties of state attorney in any circuit of the state. Any exchange or assignment of any state attorney hereunder to a particular circuit for a period in excess of sixty days in any one calendar year must be approved by order of the supreme court upon application of the governor showing good and sufficient cause to extend such exchange or assignment. (Emphasis added)
"27.15 State attorneys to assist in other circuits. 
(1) The governor of the state may for good and sufficient reasons require any state attorney in the state to proceed to any place in the state and assist the state attorney holding office in the circuit where such place is located in the discharge of any of the duties of such state attorney. Any state attorney in this state who shall be so directed by the governor to go and assist any other state attorney in the discharge of his duties shall immediately proceed to the place designated and assist the state attorney of the circuit in which such place is located in the performance of his duties. (Emphasis added)
* * * * * *
"27.16 Appointment of acting state attorney.  Whenever there shall be a vacancy in the office of the state attorney in any of the judicial circuits of this state, either by nonappointment or otherwise, or if a state attorney shall not be present at any regular or special term of the courts of his circuit or, being present, shall from any cause be unable to perform the duties of his office or shall be disqualified to act in any particular case, the circuit judge of his judicial circuit shall have full power to appoint a prosecuting officer from among the members of the bar, with the consent of the member so appointed, to whom shall be administered an oath to faithfully discharge the duties of state attorney, and who shall have as full and complete authority, and whose acts shall be in all respects as valid as a regularly appointed state attorney. He shall sign all indictments and other documents as `acting state attorney.' The power of the appointee shall cease upon the cessation of the inability or disqualification of the state attorney or the completion of the appointee's duties in any particular case." (Emphasis added)
As earlier herein recited there is no contention here that Honorable Harry Morrison, State Attorney of the Second Judicial Circuit, is or was in any manner disqualified; nor do we here consider an "exchange" of state attorneys "nor an acting state attorney".
While F.S. 27.14 clearly permits assignment of a State Attorney from outside the circuit for the purpose of any case pending if the resident State Attorney is disqualified therein, for all other circumstances *818 the statute plainly states that the assignment of any State Attorney must be for the purpose of discharging the duties of State Attorney in that circuit.
Four times in the last thirty-five years the Supreme Court of Florida has considered the propriety of an assignment. In Hall v. State, 136 Fla. 644, 187 So. 392 (1939), the Court upheld the assignment of a State Attorney for the purposes of one case where the resident State Attorney was disqualified in that case; this is clearly permitted by the first clause of F.S. 27.14. In Johns v. State, 144 Fla. 256, 197 So. 791, 793 (1940), the Court upheld the assignment of one State Attorney "to discharge all and singular the duties of State Attorney" of the resident circuit to which assigned. (Emphasis added) In Hart v. State, supra, the Court acknowledged that it had never before decided whether a State Attorney could be assigned to another circuit for the purpose of one case where the resident was present and not disqualified, but begged the question by ruling that the remedy lay in direct proceedings by quo warranto. In Finch v. Fitzpatrick, 254 So.2d 203 (Fla. 1971), the Court ruled that the Governor's determination of "good and sufficient reasons" was conclusory: Such was the only ground which the Court mentioned for the appellant/relator's attack on the assignment. (It is axiomatic that no decision is authority on any question not raised and considered, although it may be involved in the facts of the case. State ex rel. Helseth v. Du Bose, 99 Fla. 812, 128 So. 4, 6 (1930); and City of Miami v. Stegemann, Fla.App. 3rd 1963, 158 So.2d 583.
The statutes here involved dictate three different methods by which the State Attorney of one Judicial Circuit may be sent to perform duties as a State Attorney in another Judicial Circuit:
1) The Governor may require an exchange of circuits or of courts between the two State Attorneys involved. (F.S. 27.14)
2) The Governor may assign a State Attorney to discharge of the duties of State Attorney in another circuit. (F.S. 27.14)
3) The Governor may require a State Attorney to assist the State Attorney of another circuit in the discharge of any of the duties of the latter. (F.S.27.15)
In assaying the legislative intent here, and the weight to be accorded that intent, the threshold question is whether these two statutes contain a grant of power by the legislative branch or an acknowledgment of power already resident in the executive branch.
The predecessor to F.S. 27.14, was Ch. 5399, Acts 1905, § 2, later 4743 C.G.L. 1927. That statute was challenged on constitutional grounds in Stone v. State, 71 Fla. 514, 71 So. 634 (1916). At that time the constitutional provision for State Attorneys in Florida stated:
"The Governor, by and with the consent of the Senate, shall appoint a State Attorney in each judicial circuit, whose duties shall be prescribed by law, and who shall hold office for four years." Art. V, § 15 (1885).
Because the duties were to be "prescribed by law," the Court found that the Legislature had the power to provide by statute for exchanges and assignments of State Attorneys.
In 1921 the Legislature enacted the predecessor to F.S. 27.15, viz., Ch. 8571, Acts of 1921, § 1, later 4744 C.G.L. 1927.
In 1969, following a controversy which culminated in Kirk v. Baker, Sup.Ct.Fla. 1969, 224 So.2d 311, the Legislature passed, Governor Kirk vetoed and the Legislature passed over his veto, Ch. 69-1736, Laws of Florida. That Act made three substantive changes: In F.S. 27.14, "if for any reason" was amended to read "if for any other good and sufficient reason"; in F.S. 27.15, "whenever he deems it expedient to do so" was amended to read "for good and sufficient reasons"; and the sixty day limitation *819 was added to F.S. 27.14. Both the changes made and the manner in which they were enacted lead to the conclusion that the Legislature was imposing limitations upon its previous statutory grant.
The constitutional provision now in force in Florida providing for State Attorneys states that:
"In each judicial circuit a state attorney shall be elected for a term of four years. He shall be the prosecuting officer of all trial courts in that circuit and shall perform other duties prescribed by general law; ..." Art. V, § 17.
Except for designating the State Attorney the prosecuting officer, this clause has the same substantive effect as Art. V, § 15 (1885), supra. A fortiori, except for the designation of State Attorneys as prosecuting officers the Legislature continues to have the power to provide by statute for the exchange or assignment of State Attorneys which the Supreme Court of Florida recognized in Stone v. State, supra, and which the Legislature exercised in passing Ch. 69-1736, Laws of Florida, over the veto of the Governor. That Act, by using the phrase "discharge of any of the duties of such state attorney" in F.S. 27.15, while using the phrase "discharge of the duties of state attorney of any circuit of the state" in F.S. 27.14, manifested the legislative intention that under F.S. 27.15 State Attorneys may be sent into another circuit to "assist" the resident State Attorney, the latter continuing to hold and exercise the powers of his office; whereas under F.S. 27.14 a State Attorney may be assigned to another circuit as the one and only State Attorney of the circuit, holding and exercising all and singular the duties of State Attorney of that circuit.
Further expression of the legislative intention that the phrase "the duties of state attorney" does not limit itself to the duties concerning one particular case is found in the amendment to F.S. 27.16, added by the same 1969 Legislature which amended and re-enacted F.S. 27.14 and 27.15. That section provides for the appointment of an Acting State Attorney. After the phrase providing for such an appointment if the State Attorney "being present, shall from any cause be unable to perform the duties of his office" the Legislature added the phrase "or shall be disqualified to act in any particular case." Ch. 69-212, § 1, Laws of Florida became law without signature of the Governor.
It is clear therefore that the Governor had the power and authority under F.S. 27.15, to order Respondent Honorable T. Edward Austin to the Second Judicial Circuit, there to assist the resident State Attorney in the discharge of any of his duties without limitation of time, or in the alternative to assign said Respondent as the State Attorney of the Second Judicial Circuit pursuant to F.S. 27.14 for the initial period not to exceed sixty days. In either case that circuit would have one and only one State Attorney personally charged with plenary responsibility for all investigations, informations, and prosecutions therein: But the Governor does not have the statutory power nor authority to "assign" (as distinguished from "exchange") a state attorney (in the absence of disqualification) to discharge the duties of (as distinguished from "assist") another state attorney in a single case or in regard to a single individual.
The Supreme Court of Florida recognized the necessity of statutory compliance incident to the assigning of State Attorneys in Finch v. Fitzpatrick, Sup.Ct.Fla. 1971, 254 So.2d 203, wherein upon considering a prohibition proceeding involving the assignment of Honorable T. Edward Austin to the Fourteenth Judicial Circuit pursuant to F.S. 27.14, the Court said:
"An executive order assigning a state attorney is exclusively within the orbit of authority of the Chief Executive when exercised within the bounds of the statute. See Kirk v. Baker, 224 So.2d 311 (Fla. 1969)." (254 So.2d at page 204; emphasis added)
*820 Respondents seek to rely upon Advisory Opinion to Governor, 1942, 152 Fla. 119, 10 So.2d 926. There, the Supreme Court approved the assignment of a County Solicitor from outside the county to which he was assigned in the absence of legislative treatment of the particular circumstances there involved. Clearly, under such circumstances, the governor had the constitutional right and duty to so act. No such situation here exists. All agree in the case sub judice that the legislature has established the public policy of the State with reference to the assignment and exchange of State Attorneys, by the passage of F.S. 27.14 and 27.15. Therefore, in the case sub judice we need not resort to constitutional principles nor may we rely upon Advisory Opinion to Governor, supra, because here the issue is not whether the governor may act in the absence of statutory authority, but whether the Executive Order here involved complies with specific and unambiguous statutory authority. Respondents so conceded during oral argument before this Court, but asserted that notwithstanding the recitation in the challenged Executive Order that the assignment was pursuant to F.S. 27.14, the order is nonetheless valid because Respondents were assisting Honorable Harry Morrison by relieving him from the responsibility of investigating and receiving testimony and evidence concerning Relator. We do not construe the meaning of the word "assist". A careful reading of F.S. 27.15 clearly reveals that the Legislature intended, by use of the verb "assist" that the Assigned State Attorney aid or help the State Attorney of the Circuit to which assigned by working with him, not by replacing him. "Assist" is defined in Webster's Seventh New Collegiate Dictionary, Copyright 1967, to mean "to help: to give support or aid". Such term clearly denotes an intent that the Assigned State Attorney work with and under the resident State Attorney and not apart nor independent of him.
We conclude therefore that the purported assignment of the State Attorney of the Fourth Judicial Circuit by the challenged Executive Order to the Second Judicial Circuit for the admittedly sole purpose of investigating and receiving testimony and evidence concerning the Relator was not in accordance with statutory authority and was and is therefore invalid.
Obviously, if the assignment of the State Attorney of the Fourth Judicial Circuit was invalid so was the assignment of his Assistants, Respondents Honorable Aaron K. Bowden and Honorable Robert Willis. However, there are other considerations to be taken into account relative to their assignment.
State Attorneys are constitutional officers, charged with the responsibility of prosecutions in the circuit in which he is elected and with the performance of such other duties as are prescribed by general law. He is required to have been a member of the Bar of Florida for at least five years. (Constitution of Florida Art. V, Sec. 17) Being an elected official he is responsible to the electorate of his circuit, this being the traditional method in a democracy by which the citizenry may be assured that vast power will not be abused. On the other hand, Assistant State Attorneys are appointed by the State Attorney, serving at his pleasure, and responsible only to him. Experience is not a requisite to their appointment. (F.S. 27.181(2)) While the office of State Attorney is a constitutional office, the office of Assistant State Attorney is a creature of statute. The Legislature, in its wisdom, has empowered the Governor to exchange and assign State Attorneys between judicial circuits within the confines of its enactments. It has not in any similar manner empowered the Governor to exchange nor assign Assistant State Attorneys. Certainly the Legislature has not empowered the Governor to delegate to an Assigned State Attorney such authority. The vacuum of authority is not filled by F.S. 27.324 which provides that Assistant State Attorneys, *821 properly appointed, are vested with all the powers, duties and responsibilities of State Attorneys. It is obvious that that statute, when read in pari materia with F.S. 27.181 and F.S. 27.255 is intended to vest Assistant State Attorneys with the power, duties and responsibilities of their appointing State Attorney while performing their duties in the circuit of their appointment.
We deem it pertinent to observe that inasmuch as the alleged crimes for which Relator stands charged are not capital, the State Attorney, if he is confident of the basis of the indictments returned against Relator, may file an information charging the same offenses, for under the law of Florida a State Attorney's authority is, in noncapital felony cases, co-extensive with that of the Grand Jury, the only restraint upon his authority to charge a person with the commission of a non capital crime being his own conscience and ability to determine probable cause. It was no doubt in recognition of that authority and power and the requisite ability and knowledge to exercise same that the organic law of this State mandates the qualifications of legal training and experience hereinabove referred to, and that the people via their voice in the framing of the Constitution provided for the election, as distinguished from appointment, of State Attorneys.
We are not unmindful of the possibility that the issues herein resolved have already become moot. There is nothing in the record before us to indicate the date of the expiration of the assignment of Respondents here challenged. However, both Relator and Respondents assured us during oral arguments that the issues are not moot and each urged our resolution of them.
For the reasons herein stated the Petition for Writ of Quo Warranto filed herein by Relator is hereby granted. Being confident, however, that Respondents and the Governor, though not a party to this proceeding, will abide by our decision here reached, we withhold issuance of our Writ unless same is shown to be required by further proceedings herein.
It is so ordered.
RAWLS, C.J., and BOYER and JOHNSON, JJ., concur.