IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

JONATHAN KINNEY,

      Appellant,

 v.                                       Case No.  5D17-1737

PUTNAM COUNTY CANVASSING BOARD BY
AND THROUGH ITS MEMBERS NANCY HARRIS,
ELIZABETH ANN MORRIS, CHARLES L. OVERTURF III,
and HOMER D. DELOACH III, CANDIDATE
FOR PUTNAM COUNTY SHERIFF,

      Appellees.

_____/

Opinion filed September 14, 2018

Appeal from the Circuit Court
for Putnam County,
Gary Wilkinson, Judge.

Zachery Lucas Keller, of Keller Legal, Palatka,
for Appellant.

Charles T. Douglas, Jr., of Douglas & Hedstrom,
P.A., Palatka, and Christopher W. LoBianco, of
Douglas & Hedstrom, P.A., Jacksonville, for
Appellee, Homer D. DeLoach III.

John T. LaVia III, of Gardner, Bist, Bowden, Bush,
Dee, LaVia & Wright, P.A., Tallahassee, and
Ronald A. Labasky, of Brewton Plante, P.A.,
Tallahassee, for Appellee, Putnam County
Canvassing Board.

No Appearance for other Appellees.

COHEN, C.J.

In 2016, Homer DeLoach and Jonathan Kinney ran for the office of Sheriff of Putnam County ("the office").[1] The initial results indicated that Kinney received 18 more votes than DeLoach, but because the margin of victory was within one half of a percentage point, a mandatory recount of the ballots was triggered pursuant to section 102.141(7), Florida Statutes (2016). Following the recount, the Putnam County Canvassing Board ("the Board") declared DeLoach the winner of the office by 16 votes.[2]

Kinney filed an election contest complaint against the Board and DeLoach pursuant to section 102.168,[3] alleging that the election result was placed in doubt due to the Board's misconduct and the casting of illegal votes. Kinney's requested relief included invalidating the certified results of the election, ousting DeLoach, and finding that Kinney established his right to the office, or alternatively, declaring a vacancy of the office. Following discovery, the parties filed a joint pre-trial stipulation limiting the issue to be tried to the alleged "[r]eceipt of a number of illegal votes . . . sufficient to change or place in doubt the result of the election." See § 102.168(3)(c), Fla. Stat. The stipulation listed 42 registered voters identified post-election who were potentially ineligible to vote or to have their ballots counted in the election.

---

[1] A third candidate, Edison Edison, also ran for the office but is not a party to this appeal.

[2] A total of 33,488 votes were cast in the General Election. Of that number, 32,717 were cast for the office. Therefore, 771 individuals who voted in the General Election did not vote for the office. Of the votes cast for the office, 15,869 were for DeLoach, 15,853 were for Kinney, and 995 were for Edison.

[3] Section 102.168 details the process for contesting an election and gives courts the authority to review contested election results.

Those 42 votes fell into 6 categories: 32 votes by individuals allegedly adjudicated guilty of felonies without their civil rights having been restored ("convicted felons"); 1 vote by an individual allegedly adjudicated mentally incompetent; 3 votes by non-residents of Putnam County; 3 votes by individuals who died before their mail-in ballots were received and counted by the Putnam County Supervisor of Elections ("the Supervisor"); 2 votes by individuals whose ballots were timestamped after the close of voting; and 1 vote by an individual who voted in 2 states.

At trial, the parties entered into evidence several joint exhibits which included unofficial and official election results, conviction records, ballot certificates, death certificates, voter applications, and the depositions of 5 identified voters. The Supervisor then testified regarding the procedures in place to identify ineligible voters. The process begins with information from the Division of Elections, a division of Florida's Department of State ("the Department"). The Department is tasked with maintaining a "single uniform, official, centralized, interactive, computerized, statewide voter registration system" ("the system"). Id. §§ 98.035, 98.075(1).

The Department receives information from several other agencies regarding the potential ineligibility of a voter, and if the Department determines that the information is credible, it informs county supervisors of elections, who, in turn, initiate the removal of the ineligible voters from the system as provided in section 98.075(7). County supervisors are responsible for determining a voter's eligibility based on any information provided by the Department at the time the voter registers to vote. Id. § 98.045. Here, neither the Supervisor nor the Board had any knowledge upon registration, on Election Day, or during the subsequent recount of any potential issues with votes cast regarding 5 of the 6

3

categories. The Supervisor was, however, aware of the possibility that 3 non-residents voted in Putnam County.

Following trial, the court entered final judgment in favor of the Board and DeLoach, finding that Kinney failed to prove that a sufficient number of illegal votes rendered the election result doubtful and that he had a right to the office. Specifically, the court reasoned that because only 10 of the identified voters (namely, the convicted felons) had been removed from the system as of trial, DeLoach's margin of victory merely fell from 16 to 6. The court also noted the lack of evidence regarding for whom the identified voters cast their ballots, if they even voted for the office, as insufficient to cast doubt on the election result.[4] This appeal followed.

"An election should not be set aside unless a court finds substantial non-compliance with a statutory election procedure and also makes a factual determination that reasonable doubt exists as to whether a certified election expressed the will of the voters." Fouts v. Bolay, 795 So. 2d 1116, 1118 (Fla. 5th DCA 2001) (citing Beckstrom v. Volusia Cty. Canvassing Bd., 707 So. 2d 720 (Fla. 1998)). Under section 102.168(3)(c), the burden of establishing reasonable doubt in the election result fell on Kinney. The trial court found he failed to carry that burden and we agree. In affirming, we find only 2 of the 6 categories of votes challenged by Kinney merit discussion.[5]

---

[4] Kinney's argument assumes that every potentially ineligible vote was cast for his opponent.

[5] We find no error in the trial court's determinations regarding the 1 vote cast by an individual allegedly adjudicated mentally incapacitated, the 3 votes cast by individuals who died before their mail-in ballots were received and counted by the Supervisor, and the 2 votes timestamped after 7:00 p.m. The voters whose ballots were timestamped after the 7:00 p.m. deadline were in line at the time the polls were scheduled to close, and there was no impropriety in accepting their votes. The alleged incompetent voter and the

The Supervisor and the trial court found the 3 votes by individuals who no longer resided in Putnam County were proper under section 101.045. We disagree. That section provides:

> A person is not permitted to vote in any election precinct or district other than the one in which the person has his or her legal residence and in which the person is registered. However, a person temporarily residing outside the county shall be registered in the precinct in which the main office of the supervisor, as designated by the supervisor, is located when the person has no permanent address in the county and it is the person's intention to remain a resident of Florida and of the county in which he or she is registered to vote.

§ 101.045(1), Fla. Stat. The general rule is that individuals who reside outside a county are ineligible to vote in that county's elections. However, there is an exception that allows individuals who are temporarily living outside the county but who intend to remain residents of the county to vote in that county's elections. While not an exhaustive list, the exception encompasses scenarios such as voters who are living outside the county because of school, employment, health care, or similar temporary situations. The essence of the exception is the non-permanent nature of the situation that causes a voter's absence from the county.

In the instant case, a married couple sold their home in Putnam County in 2015 and retired to North Carolina. Despite their relocation to North Carolina, the couple voted in Putnam County during the 2016 General Election. The couple testified in deposition that while it was possible they might return to Putnam County in the future, they had no

---

voters who died between the time they mailed in ballots and the counting of those ballots are encompassed within the statutory analysis noted in footnote 8. See infra footnote 8.

specific plan to do so. The third vote was cast by an individual who was born and raised in Putnam County but lived in St. Johns County since 2013. The voter's driver's license listed his parents' address in Putnam County, and he too testified in deposition that he might return to Putnam County at some point in the future.

We recognize that these 3 voters had been long-time Putnam County residents and appeared to maintain a connection to, and interest in, local politics. Nonetheless, mere interest in and a connection to a county are insufficient to allow those who reside outside a county to maintain a voice in its elections. We find the situations of these 3 voters to not be the type of temporary absence contemplated by section 101.045(1). Therefore, the Supervisor's and the trial court's determinations that those voters were eligible to vote in the election were incorrect.

The largest category of votes on which Kinney relies to support his argument to oust DeLoach from the office are the identified votes cast by alleged convicted felons. Article VI, section 4(a) of Florida's Constitution provides, "No person convicted of a felony . . . shall be qualified to vote . . . until restoration of [his or her] civil rights . . . ."[6] Section 97.041 codifies the constitutional requirement of being a qualified voter.[7] The legislature has provided a mechanism for identifying individuals who are ineligible to vote. See id. § 98.075. Specifically, the Department is responsible for initially identifying potentially ineligible voters. Id. § 98.075. As to convicted felons, the Department compares "information

---

[6] Florida's Constitution defines "felony" as "any criminal offense that is punishable under the laws of this state, or that would be punishable if committed in this state, by death or by imprisonment in the state penitentiary." Art. X, § 10, Fla. Const.

[7] Furthermore, it is a third-degree felony for any voter to cast a ballot knowing that he or she is not a qualified voter. § 104.15, Fla. Stat.

received from, but not limited to, a clerk of the circuit court, the Board of Executive Clemency, the Department of Corrections, the Department of Law Enforcement, or a United States Attorney's Office." Id. § 98.075(5). If the Department determines that the information is credible, it then notifies the Supervisor, who then proceeds with the removal process provided in section 98.075(7). Id.[8]

The evidence is uncontroverted that the Supervisor was not notified by the Department that any of the alleged 32 convicted felons were potentially ineligible to vote upon voter registration, on Election Day, or during the recount. Had the Department notified the Supervisor of the voters' potential ineligibility, section 98.075(7) requires that the Supervisor then notify each registered voter of his or her potential ineligibility by mail within 7 days of receiving notice from the Department, give the voter 30 days to respond, hold an evidentiary hearing if requested by a voter, and give that voter an opportunity to appeal a determination of ineligibility before officially removing the voter from the system. Id. § 98.075(7).

Based on the Supervisor's testimony, as of the time of trial, 10 of the identified convicted felons who voted in the 2016 General Election were removed from the system pursuant to section 98.075(7). However, as our supreme court has noted, "[t]he rule is settled in this state that where an election is otherwise valid, it will not be held void because illegal votes were cast." State ex rel Pooser v. Wester, 170 So. 736, 739 (Fla.

---

[8] Section 98.075 also mandates the Department to identify voters who are ineligible because they are deceased, have been adjudicated mentally incompetent, or are otherwise ineligible to vote and provides the same removal process. Id. § 98.075(3), (4), (6).

7

1936). Based on the statutory procedures detailed above, the trial court found that Kinney failed to meet his burden of placing the election result in doubt because the 10 identified convicted felons who were properly removed from the system only reduced DeLoach's margin of victory from 16 to 6. The court reasoned that even if Kinney identified more than 16 ineligible votes, he still did not meet his burden because no evidence was presented that the identified voters actually voted for the office, considering that 771 more votes were cast in the General Election than for the office, or for whom the voters cast their ballots if they voted for the office.

We agree. With the exception of 1 voter whose deposition was entered into evidence and who acknowledged voting for DeLoach, the record is silent as for whom, if anyone, the other 41 voters cast ballots. More importantly, on Election Day, the Supervisor had no knowledge of any ineligible or improper votes, other than those cast by the 3 non-residents, and had no legal authority to reject and not count the now-disputed votes. In contrast to the cases Kinney relies on,[9] this election was not one in which a candidate used illegal tactics to obtain votes or election officials failed to comply with the statutory election procedures. See Fouts, 795 So. 2d at 1118 (reversing final order granting quo warranto relief and ouster where evidence presented did not prove

---

[9] See Bolden v. Potter, 452 So. 2d 564 (Fla. 1984) (affirming the invalidation of all absentee ballots cast in an election where evidence, which included 46 voters testifying that their votes were bought, established substantial vote-buying "so conspicuously corrupt and pervasive that it . . . tainted the entire absentee voting procedure in this election"); In re Protext Election Returns & Absentee Ballots in Nov. 4, 1997 Election for Miami, Fla., 707 So. 2d 1170 (Fla. 3d DCA 1998) (invalidating all absentee ballots cast in mayoral election where statistical expert testified that deviation in absentee ballot cast per district could not be explained by any normal statistical measurement, other experts testified as to illegal absentee ballots and false voter addresses, and there was evidence of stolen ballots, falsely witnessed ballots, and ballots procured by ballot brokers).

that ousted candidate "violated any applicable election procedure, much less that any non-compliance raised doubts as to whether the election reflected the will of the voters").

There must be a relatively swift procedure for certifying the results of an election, and the Supervisor and Board followed the law in carrying out that responsibility. We agree with the trial court, which entered a thorough order in this case, that ultimately, Kinney did not meet his burden of proving that the validity of the election of Putnam County Sheriff was in doubt. Accordingly, we affirm.

AFFIRMED.

LAMBERT and EDWARDS, JJ., concur.

9