C. F. HART v. STATE.

198 So. 120
En Banc
Opinion Filed October 11, 1940
Rehearing Denied November 4, 1940

410

*Alfred T. Airth* and *R. C. Horne,* for Appellant;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General, for Appellee.

Thomas, J.—It was charged in an information filed by the State Attorney that the appellant "did wilfully and with intent to injure and defraud the insurer * * * attempt to counsel and procure the burning of a * * * store building * * * together with all personal property located in said store building by then and there unlawfully and feloniously re-

questing and soliciting one........................to burn said store building and all the personal property located therein, and by then and there offering to pay the said........................a substantial amount or sum of money as a reward for burning * * * " said property.

In this appeal he contends that the information, the material parts of which we have summarized, is fatally defective because of the unconstitutionality of Chapter 15602 of the Laws of Florida, Acts of 1931 (extra session), and also for the reason that no offense is charged. The reply of the Attorney General to these contentions is that the information was not filed under the statute we have given, but under Chapter 15603 of the Laws of Florida, Acts of 1931 (extra session). At the outset we have the view that because of the language employed by the prosecuting officer, who in addition to what we have quoted, gave in detail the name of the insurance company attempted to be defrauded, the amount of the policy, and the name of the mortgagee who was to be reimbursed from any amounts paid under the policy, it is evident that the prosecution was instituted under the former Act. This was also the view of the trial judge who instructed the jury that it was incumbent on the State to prove beyond a reasonable doubt that the Act was done with intent to injure and defraud the insurance company.

It has been argued strenuously that this particular Act is fatally defective because the title was not broad enough to cover the contents of Section 1.

By the title notice was given that the proposed law defined and declared " * * * the Act of Burning or Attempting to Burn Any Property of Value With Intent to Defraud the Insurer of Such Property, to be Arson With Intent to Defraud, Whether the Same Would Be Arson at Common

Law or Otherwise * * *." And in Section 1 it was provided that any person " * * * who wilfully and with intent to injure or defraud the insurer * * * burns or attempts so to do or who causes to be burned or who aids, counsels or procures the burning of any building, structure or personal property * * *" should be punished as stated therein.

It is the position of the appellant that the reference in the title to the burning or attempting to burn gave no notice that the act of one who aided, counseled or procured the burning was denounced.

With this contention we cannot agree.

There is no absolute rule by which it may be determined whether or not the requirement of Section 16 of Article III of the Constitution that " * * * but one subject and matter properly connected therewith * * *" shall be embraced in a law enacted by the Legislature has been observed, although many cases involving the interpretation of this part of the organic law have been decided by this Court. However, a review of these decisions convinces us that the doctrine developed by them fully justifies a holding in this case, that the title of Chapter 15602 put everybody who read it on notice that not only burning or attempting to burn was denounced, but also the offense or offenses of aiding, counseling and procuring the destruction of buildings by fire with intent to defraud the insurer. For illustration, in the case of Frank Holton v. State of Florida, 28 Fla. 303, 9 So. 716, a title describing the Act as one simply " * * * to protect females of immature age and judgment from licentiousness" was held to give notice that it contained provisions for the punishment of those having carnal intercourse with unmarried females under seventeen; those procuring any such females for the purpose of prostitution; and those causing any such females to be prostituted. Aside from the decisions

of this State our research has disclosed the one of the Supreme Court of Louisiana, State v. Fabiano, 144 So. 735, more nearly in point where a law was held good against the challenge that the body of the Act was broader than the title. The title described the Act as one " * * * relative to the crimes of burning or attempting to burn certain property, defining said crimes and offenses, prescribing what facts shall constitute an attempt to burn * * *."

The defendant with others was charged under that law with the aiding, counseling and procuring the burning of a dwelling house under a section providing that any person who " * * * sets fire to or burns or causes to be burned or who aids, counsels or procures the burning * * * " of property should be punished upon conviction. The Constitution of Louisiana contains a qualification similar to ours with respect to titles of Acts of the Legislature.

Concluding as we do that the law withstands the attack made upon it, we proceed to the question whether or not the Act charged in the information is the one prohibited.

As we have stated, the defendant was charged with attempting to counsel and procure the burning of property by requesting another to commit the unlawful act and offering to pay him for his misdeed. The question is whether a conviction is valid where the offense described was the aiding, counseling or procuring the destruction of property by fire. In this connection there should be considered Section 7544 of the Compiled General Laws of 1927, providing that whoever attempts to commit any offense shall be punished as stated therein. Therefore, it became a violation of law under Chapter 15602, *supra,* to aid, counsel or procure the burning of a building to defraud an insurer, and under 7544, *supra,* to attempt to do so. The latter offense was properly charged in the information, so the defendant could be tried

and found guilty of the attempt to counsel or procure another to burn the building described in the information with intent to defraud the insurance company, and the elaboration in the formal charge that the attempt consisted of requesting and soliciting the person named in the information to commit the offense, and offering to pay him a substantial sum of money in reward for his misdeed met the requirements that an overt act must be alleged. Hogan v. State, *infra*.

Before we pass to the other questions which we are to decide, it seems fitting to point out that the formal sentence imposed by the court on the defendant recited that he was guilty of the crime of fourth-degree arson, defined in Chapter 15603, *supra*, and a sentence of two years in the State penitentiary was imposed upon him. This recital was error.

Adverting to the sufficiency of the information, the appellant has urged that no overt act was described as is necessary in charging an attempt (See Hogan v. State of Florida, 50 Fla. 86, 39 So. 464), because a solicitation or offer of reward will not suffice in alleging the essential elements of an attempt. It is our opinion that the averments that the defendant requested and solicited another to burn property, and offered to pay the person solicited a substantial reward for the burning, sets out an overt act when the charge is the attempt, not to burn, but to counsel and procure the burning. In other words, we do not propose to hold that if the defendant were charged with an intent to commit arson to defraud the insurance company, he could be convicted by testimony that the attempt consisted of inopportuning and promising to compensate another for the performance of the act, but that it is sufficient where instead of being charged with the intent to commit arson

he is held to answer an information that he attempted to procure and counsel the arson.

The next assertion by the appellant is that the evidence was not sufficient to sustain a conviction of the offense as it was detailed in the information. Briefly, the evidence of the State, which was given credence by the jury, showed that in the latter part of June of the year 1939, the defendant insured the property with the company named in the information for the amount stated therein with a clause providing for the payment, in the event of 'loss, for the discharge of a mortgage given by the defendant to the mortgagee whose name likewise appeared; that a few days thereafter, the defendant sought out one, W. A. Ward, as alleged, and promised to pay him $150.00 or $175.00 to set the insured property afire, and at the same time discussed with Ward the amount of gas that would be needed to accomplish that purpose; that the following day he called on Ward, gave him a key to the rear door of the building and arranged with Ward that if he decided not to engage in the unlawful venture he would wire the defendant "To come and look at some hogs;" that two or three days later Ward sent a telegram to the defendant as follows: "If you want the hogs come tonight Let me know;" that after the fire occurred, the defendant called on Ward, paid him the cost of the wire and told him to hold the key; that the key was subsequently given to the sheriff and that it fitted the lock on the doors which were blown clear of the building at the time of the fire, and which were produced in court at the time of the trial. It was further established by the representative of the telegraph company that the wire was sent, and by other witnesses, that it was received. The testimony, of which we have given but a brief sumary, amply supported the verdict rendered by the jury.

Lastly, we reach the attack made by the appellant on the authority of the State Attorney of the Second Judicial Circuit to sign the information and conduct the prosecution of the case which was pending in the Third Judicial Circuit when the State Attorney of the latter circuit was present and not disqualified. By executive order of the Governor of Florida, reciting that the ends of justice would best be subserved thereby, the State Attorney was assigned to the Third Judicial Circuit to discharge the duties of the resident State Attorney in the trial of this case. The matter was presented in the lower court by pleas to the jurisdiction and by a motion to quash and the bases for the contention presented were the orders of the court sustaining a demurrer to the pleas and denying the motion to quash. Considerable space is given in the brief of the appellant in his attack upon the authority of the State's chief executive "to oust and remove from office a constitutional officer, namely, the duly elected, appointed and qualified State Attorney," and to his power to substitute for him a prosecuting officer from another circuit. Not wishing to beg the question and despite the forceful manner in which the merits of the contention are presented, we will dispose of the matter by deciding whether the authority of a state attorney assigned under the statute (4743 C. G. L. 1927), may be challenged collaterally or such an assigned officer's power should be determined by proceedings in quo warranto.

The first expression of this Court on the subject appears in State v. William H. Gleason, 12 Fla. 190, where the controversy involved quo warranto brought by the Attorney General to oust the Lieutenant Governor, and the authority of the Attorney General to act was challenged on the ground that he had been appointed to that office after his impeachment by the Assembly and before his acquittal by the

Senate. In a discussion by Mr. Chief Justice RANDALL, who delivered the opinion of the Court on that phase of the litigation, he stressed the importance of the recognition of the authority of various officers to act and the havoc which would be wrought if this authority could be brought into doubt lightly and by collateral attack. It was said there " * * * when it appears that the person exercising the powers of an office is in by such a color of right, and that he has such possession of the office as makes him in law an officer *de facto,* then his acts as to third persons, are valid, and his right to hold the office can only be inquired into in some direct proceeding for that purpose."

Later, in the case of Stone v. State, 71 Fla. 514, 71 So. 634, Mr. Justice WHITFIELD, writing for the Court, referred to the above decision in Gleason v. State, and after giving a very lucid statement of the relative importance of assigning circuit judges and state attorneys, observed that " * * * when it appears that a person exercising the powers or duties of an office named in the Constitution does so by virtue of a recognized color of right, his acts, as to third persons, are valid, and his right to exercise the duties of the office can be authoritatively inquired into only in some direct proceeding for that purpose."

In our research we have examined the case of Walker v. State, reported in 93 Fla. 1069, 113 So. 96, where the Court reviewed the order of the trial court denying a motion objecting to the official action of a non-resident state attorney who had been assigned to the circuit by executive order under Section 3009, Revised General Statutes, which is identical with Section 4743 of the Compiled General Laws. It was said by the Court in that controversy that it was doubtful if the defendant could raise the point as the assigned attorney was a constitutional officer acting under

the color of authority. There immediately followed the statement by the Court that his acts as to third persons were valid, and that his right to perform the duties of the office could be " * * * inquired into only in some direct proceeding for that purpose." The authority given for the statement was State v. Gleason, *supra*.

This doctrine of the validity of the acts of officers *de facto* was applied by Mr. Justice Brown in the case of Sawyer v. State, 94 Fla. 60, 113 So. 736, to a situation where an assistant undertook to act in the stead of a county solicitor.

The latest discussion of the Court on the subject appears in the case of George L. Johns v. State of Florida, not yet reported. We have carefully examined what was said there, but do not find in it, or in any of the other opinions which we have examined, any expression inconsistent with the view that a collateral attack should not be permitted on the authority of a state attorney assigned by the Governor to conduct the trial of cases in another judicial circuit, and this conclusion is in harmony with the conclusions reached in Gleason v. State and Walker v. State, *supra*.

That these officers armed with commissions from the chief executive of the State should be allowed to discharge their duties unhampered is of the utmost importance to the proper conduct of the affairs of the State in criminal prosecutions and other actions, and his acts may not be challenged collaterally, even though upon direct proceedings it might develop that they could not " * * * protect themselves in reference to their action." State *ex rel.* Bisbee v. Board of County Canvassers of Alachua County, 17 Fla. 9, text 16.

It is conceivable that many situations would arise where the proper administration of justice would "be subserved" by the transfer of state attorneys, even though the cor-

responding resident official might be present, and to all appearances, capable and qualified. A state attorney might be sent into another circuit because better qualified from his experience to prosecute a particular offense. One might be assigned to insure a speedy trial where the docket had become burdensome. In the abundance of caution, a resident state attorney might ask that he be relieved from the prosecution of a case where he felt he might, because of circumstances which would not justify a disqualification, be embarrassed in discharging the duties of his office. These and many other circumstances could motivate the Governor in issuing an order for the assignment, and reciting in it in all good faith that justice would be subserved by its issuance.

On the other hand, if attacks were allowed to be made by motions to quash, and by pleas to the jurisdiction as was done in this case, such an official, acting under the color of the office, might well transact business of the utmost importance as the representative of the State, his every act being meanwhile placed under some doubt and suspicion because of collateral attacks upon the official order vesting him in the other jurisdictions with the authority that he exercised in his own under the commission of his office. We think that in the interests of the State, and without depriving any defendant of any right to which he might be entitled, such suspicion should not be cast upon the executive orders of the Governor in this fashion, but that if the power and authority of an assigned state attorney is to be tested, it should be done in direct proceedings by quo warranto.

Referring again to the form of the sentence pronounced in this case, we think it erroneous and therefore, the cause is reversed as to that matter only, with directions to the judge of the circuit court to pass a proper sentence in

accordance with the views expressed in this opinion and the statutes we have cited.

It is so ordered.

Terrell, C. J., Whitfield, Brown, Buford and Chapman, J. J., concur.