912 So.2d 43 (2005)
Catherine STANEK-COUSINS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-1129.
District Court of Appeal of Florida, Fourth District.
August 31, 2005.
Rehearing Denied October 17, 2005.
*44 Michael Morris of Morris & Morris, P.A., West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, Belle B. Schumann, Assistant Attorney General, Daytona Beach, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, J.
Appellant, Catherine Stanek-Cousins ("Cousins"), has timely appealed a conviction for manslaughter and sentence to fifteen years for the shooting death of her husband, Sean Cousins ("Sean"). This appeal was transferred to this court from the fifth district based upon its determination that venue had been transferred to the fifteenth circuit. Stanek-Cousins v. State, 896 So.2d 865 (Fla. 5th DCA 2005). For the reasons explained herein, we affirm the conviction and sentence, and reverse the restitution order as to the amount only.
On November 21, 2002, Cousins and her co-defendant Timothy Koile ("Koile") were indicted in the Ninth Judicial Circuit in and for Osceola County, Florida, for the first degree murder of her husband, Sean. The indictment alleged that the murder occurred between May 6 and May 12, 2001, and occurred in Palm Beach, Martin, St. Lucie, Indian River, Brevard and Osceola counties. Cousins was held in jail in Osceola County while her ninth circuit public defender investigated the case for one year. The State filed its notice of intent to seek the death penalty on March 21, 2003. On March 24, 2003, six weeks before the trial date, Cousins sought to change venue from Osceola County to Palm Beach County based on the allegation in the indictment that the exact location of the offense was unknown and may have taken place anywhere from Palm Beach to Osceola counties. On April 8, 2003, the trial court issued an order transferring venue to the Fifteenth Circuit, in and for Palm Beach County. As the fifth district recently held, "Cousins elected to be tried in Palm Beach County, and the trial court granted the motion. Thus, venue was transferred, and she was tried and convicted in Palm Beach County, which is in the Fifteenth Judicial Circuit." Stanek-Cousins, 896 So.2d at 866.
The public defender representing Cousins moved to withdraw on April 3, 2003. The motion stated that Cousins did not waive her right to speedy trial and that speedy trial was set to expire on May 20, 2003. The motion also alleged that, over objection, the trial court directed the Osceola County Public Defender's office to represent Cousins at trial in West Palm Beach. The motion to withdraw stated that only Robert Wesley, the elected public defender, met the minimum standards for attorneys in capital cases and it would be an undue hardship to force him to go to West Palm Beach for a four-week trial. The trial court denied the motion, finding that Cousins refused to waive her speedy trial right; appointing another lawyer to represent Cousins would not give the new lawyer sufficient time to prepare to defend Cousins against the instant charge and still meet the speedy trial deadline. In the order, the trial court stated that it repeatedly explained the ramifications of counsel's dilemma to Cousins, but that Cousins insisted that she would not waive speedy trial. The Court concluded that the public defender who had been representing Cousins since arraignment was in *45 the best position to represent her in the upcoming trial.
The trial began on May 19, 2003 in Palm Beach County. Cousins and co-defendant Koile were tried simultaneously. The jury found her guilty of manslaughter and she was sentenced to fifteen years in prison and ordered to pay restitution. During the course of the trial, Koile pled guilty to the crime of second-degree murder.[1] The following evidence was adduced at trial:
Cousins and Sean were not happily married and Cousins was involved in a sexual relationship with her neighbor, Koile. Sean had previously obtained a life insurance policy in the amount of $500,000, naming Cousins as the primary beneficiary. On March 6, 2001, Sean and Cousins increased the policy to $1,000,000. Cousins signed the check activating the million dollar policy.
Koile testified that Cousins repeatedly told him that she wished Sean was dead. Koile suggested that he elicit his friend, Dan Bakovic, to help kill Sean. A meeting took place amongst the three of them, and Bakovic agreed to kill Sean for half of the insurance proceeds. Koile claimed that Cousins gave Bakovic $1,500 cash to purchase an untraceable weapon. Various emails and telephone records corroborate Koile's testimony. Bakovic was supposed to kill Sean at 9 p.m. in a movie theater parking lot on Sunday, May 6, 2001 when Cousins sent him outside to get her sweater, but Bakovic did not show up.
The following day, Monday, May 7, 2001, Koile received a page and phone call from Cousins in the evening demanding that he come to her house. When he arrived at Cousins' garage, he saw Sean lying on the garage floor, bloody, after having already been shot in the stomach. Sean cried and begged Cousins not to kill him. Koile claimed that Cousins handed him the gun and told him to kill Sean. He refused and Cousins then squatted down and shot him in the head. Bakovic showed up later that night and assisted Cousins and Koile with cleaning up the blood.
Prior to disposing of the body, Cousins used Sean's cell phone to call her own cell phone. Phone records confirm that Cousins never left her home while the calls were made. Koile and Bakovic drove Sean's body to Osceola County, where they dumped it in a creek. Phone records also showed that Koile and Cousins communicated many times the morning of Tuesday, May 8, 2001. The cell tower records showed that Koile was moving from Palm Beach County, through Martin, Indian River, Brevard and into Osceola County and back. Sean's body was found in an Osceola County creek.
The jury returned a guilty verdict to the lesser count of manslaughter. On September 16, 2003, the State filed its Notice of Intent to Request Restitution. Sentencing was held on September 19, 2003 at the Palm Beach County Courthouse. Cousins was sentenced to fifteen years in prison. Restitution was ordered, with jurisdiction reserved as to the amount. Cousins appealed the conviction and sentence on September 19, 2003. While the appeal was pending, the trial court held the restitution hearing on October 27, 2003 and rendered the written order on December 19, 2003, ordering Cousins and Koile to pay $17,696.33 to Patrick Cousins, Sean's father, $1,500.00 to Roseanne Cousins, Sean's mother, and $2,042,126.00 to the Estate of Sean Cousins. Cousins raises *46 several issues on appeal, which we address below.
First, we affirm the judge's rulings involving the venue transfer to the fifteenth circuit, as Cousins has failed to demonstrate that the trial court abused its discretion or that any alleged procedural error was harmful. The standard of review for an order on a motion to transfer venue is abuse of discretion. See D.M. v. J.D.M. ex rel C.F., 814 So.2d 1112 (Fla. 4th DCA 2002).
Cousins argues that the trial court erred when it allowed the clerks, state attorneys, and public defenders[2] from the ninth circuit to participate in the case in the fifteenth circuit after the trial court granted Cousins' election of venue to the fifteenth circuit, and when it ordered the parties to file all of their pleadings with the ninth circuit case number.[3] Cousins contends that once the trial court granted her election to transfer the case to the fifteenth circuit, the ninth circuit no longer had jurisdiction to take any further action other than to transfer the case. Therefore, she claims, allowing the ninth circuit to remain "involved" constituted error. We disagree with her contention and hold that Cousins received exactly what she requested  a fair and impartial trial in the fifteenth circuit, where she elected venue.[4] Moreover, she also received her speedy trial. The trial court entered an order granting Cousins' election of venue to the fifteenth circuit. The trial and sentencing were conducted in the fifteenth circuit. We underscore the fact that Cousins elected this venue change shortly before the scheduled trial date in a capital case, while at the same time refusing to waive her speedy trial rights. In the instant case, if any error was committed in honoring Cousins' demand for a speedy trial, Cousins clearly invited the error. See Ashley v. State, 642 So.2d 837 (Fla. 3d DCA 1994) ("In the instant case, if any error was committed in honoring the defendant's demand for speedy trial, the defendant clearly invited the error. Therefore, the defendant cannot take advantage on appeal of the situation he created at trial.").
Here, the trial judge accompanied the case to the fifteenth circuit as permitted under Florida Rule of Judicial Administration 2.180(b).[5] Because venue was transferred to the fifteenth circuit, the fifth district lacked jurisdiction to hear the appeal and properly transferred the appeal to this court. See Vasilinda v. Lozano, 631 So.2d 1082, 1085 (Fla.1994) (when venue is transferred to another jurisdiction and case is concluded in new jurisdiction, review of judgment is properly commenced in appellate court which has jurisdiction over transferee court).
Cousins points to the principle that "[c]hanges of venue in criminal cases do *47 not become effective until the court file has been received in the transferee court." See Vasilinda, 631 So.2d at 1087.[6] Cousins claims that error occurred because the ninth circuit clerk physically transported the file to the fifteenth circuit and functioned as the clerk at trial. Even assuming the ninth circuit clerk did not give the court file to a fifteenth circuit clerk, it can be argued that the transfer was effective when the trial actually occurred in a courtroom at the Palm Beach county courthouse. Moreover, Cousins provides no explanation for how she was prejudiced by the ninth circuit clerk accompanying the presiding judge when venue was transferred. Additionally, Cousins cites no authority for her position that her constitutional right to elect venue also includes the right to select the state attorney's office to prosecute her case, the public defender's office to defend her case, or the clerk to receive evidence and swear in witnesses at trial. See also Hart v. State, 144 Fla. 409, 198 So. 120 (1940) (a state attorney may be sent into another circuit because qualified from his experience to prosecute a particular offense, or he may be assigned to another circuit to insure a speedy trial, where the docket has become burdensome). Based on the foregoing, we affirm the rulings below involving the venue transfer, as Cousins has failed to demonstrate that the trial court abused its discretion or that any alleged procedural error was harmful.
In a related issue, Cousins contends that the trial court exceeded its territorial jurisdiction when during trial, on its own motion, the trial court rendered an order directing the clerk of the court not to accept any filings not identified as being filed in the Ninth Judicial Circuit.[7] During trial, the trial court stated that the parties had to keep the Osceola County case style and number because the case was not assigned to a new case number in Palm Beach County. Cousins' underlying premise that the trial court's order constituted a ruling that the trial was taking place in the ninth circuit is incorrect. The court merely ordered that any pleadings filed with the court contain the original ninth circuit's case style and number because, as it explained, the case was not assigned a new case number in Palm Beach County. Cousins has failed to demonstrate any reversible error in the court's instruction to the parties to use the original ninth circuit's case style and number.
*48 We agree with Cousins, however, that the trial court acted without jurisdiction when it determined the amount of restitution after Cousins filed her Notice of Appeal. Questions of subject matter jurisdiction are reviewed de novo. Jacobsen v. Ross Stores, 882 So.2d 431, 432 (Fla. 1st DCA 2004). Here, Cousins was sentenced on September 19, 2003. The trial court imposed restitution at sentencing, but the trial court reserved jurisdiction to determine the amount at a later date. Cousins also filed her appeal on September 19, 2003. The trial court held the restitution hearing on October 27, 2003, and rendered the written order on December 19, 2003, ordering Cousins and Koile to pay $17,696.33 to Patrick Cousins, $1,500.00 to Roseanne Cousins, and $2,042,126.00 to Sean's Estate.
This court has held that "[a] trial court does not have jurisdiction to hold a restitution hearing or enter an order of restitution after a notice of appeal has been filed," even where restitution was ordered at sentencing but the amount reserved. Marro v. State, 803 So.2d 906 (Fla. 4th DCA 2002); see Craig v. State; 766 So.2d 257 (Fla. 4th DCA 2000). Based on Marro and Craig, the proper result is for this court to strike the order of restitution; "[h]owever, because the trial court reserved jurisdiction to hold a restitution hearing, restitution may be reimposed on remand." Marro v. State, 803 So.2d at 906. We note that, where the hearing is not set to occur until after notice of appeal has been filed, the better practice would be to ask this court to relinquish jurisdiction to allow the trial court to hold a hearing as to the amount of restitution.
As to the remaining issues Cousins raises on appeal, we find them to be unpersuasive and decline to address them individually.
Affirmed in Part, Reversed in Part, and Remanded.
STEVENSON, C.J., and CROW, DAVID F., Associate Judge, concur.
NOTES
[1] In exchange for his plea and testimony against Cousins, he received a sentence between eight and ten years followed by five years of probation.
[2] We also note that, with respect to the issue of the public defender traveling from the ninth circuit, this issue is barred by the law of the case doctrine because Cousins already sought review of this claim by emergency extraordinary writ filed originally with the Supreme Court but transferred to the fifth district. See Wesley v. State, No. 5D03-1351 (Fla. 5th DCA April 30, 2003).
[3] Cousins does not state how, if any error occurred, she was harmed by the ninth circuit case number on the filings.
[4] We also reject Cousins' alternative argument that no valid transfer of venue took place. Cousins claims that the transfer of venue did not occur because the ninth circuit clerk failed to transmit the file to the fifteenth circuit clerk and because the case was not assigned a fifteenth circuit case number.
[5] "The presiding judge from the originating court shall accompany the change of venue case, unless the originating and receiving courts agree otherwise."
[6] It should be noted that the facts surrounding Vasilinda are distinguishable from the present case. Vasilinda addressed which appellate court had jurisdiction when a criminal case is transferred and the trial judge accompanies the case. Vasilinda dealt with the retrial of a police officer whose motion for change of venue should have initially been granted. On remand, the trial judge entered an order which had the effect of prohibiting the media from publicly identifying the jurors. A television journalist filed a motion to modify the order with respect to its prohibition. The trial judge denied the motion. The journalist sought review of the denied order in the third district. Because of the change in venue, the journalist should have sought review in the fifth district.
[7] Cousins relies on Kohut v. Evans, 623 So.2d 569 (Fla. 4th DCA 1993). In Kohut, the trial judge transferred venue for the purpose of selecting a jury. After jury selection, the trial judge chose to return the case to the original county. This court held that the trial judge acted in excess of his jurisdiction. However, Kohut is distinguishable on several grounds. In the present case, the entire trial was conducted in the fifteenth circuit; it was not moved back and forth between circuits during trial as in Kohut. Moreover, Kohut is arguably no longer good law because, in the interim since it was decided, the legislature has amended sections 910.03 and 26.021 to expand the definition of territorial jurisdiction to include exactly what the trial judge had done in Kohut. See §§ 910.03(3), 26.021(21).